John FUTCH, Individually and as Personal Representative of Cecil Futch, Plaintiff-Appellant,

v.

MIDLAND ENTERPRISES, INC., et al., etc., Defendants-Appellees.

No. 72-2900

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1973.

James A. George, Baton Rouge, La., for plaintiff-appellant.

George B. Matthews, New Orleans, La., for defendants-appellees.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

While the who-has-standing-to-sue-under-*Moragne* question which this cause presents is novel, the district court's answer—the personal representative of the deceased—is clearly correct.

Cecil Futch drowned when the towboat and barge on which he was employed as an able-bodied seaman capsized. The vessels were owned by defendants, Midland Enterprises, Inc. and The Ohio River Company, and bareboat chartered to and operated by defendant, Red Circle Transport Company. For a consideration of 75,000 dollars, Futch's widow and Administratrix executed a receipt and release relinquishing all rights against the defendants, their agents, and the various vessels involved.

The decedent's father, John Futch, subsequently brought an action against these vessels and defendants under the Jones Act, the Death on the High Seas Act, and the General Maritime Law of the United States. The decedent's father conceded that he was not the personal representative of the deceased—which necessarily conceded that he could not bring this suit under the Jones Act or the Death on the High Seas Act. He asserts, however, a right of action against the defendants for his son's death under Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In granting summary judgment, the court below, 344 F.Supp. 324, concluded that the father had no standing to sue for *Moragne*-type damages, since he was not the personal representative of the decedent. We affirm.

To sharply focus the issue decided, the only question presented is whether or not this particular plaintiff has standing to sue in this case. We note at the outset that we do not decide who would be a beneficiary of a properly brought *Moragne*-type action. While the *Moragne* court did not speak directly to this precise question at hand, its opinion did set

---

* Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

out certain principles as guides for the inferior federal courts in developing this new area of the General Maritime Law. Apropos to the instant issue, the opinion indicates, in the context of discussing the proper delineation of the class of beneficiaries who are entitled to recover under this new federal maritime cause of action, that the expressions of Congress in the Death on the High Seas Act,[1] the Jones Act,[2] and the Longshoremen's and Harbor Workers' Compensation Act[3] provided persuasive analogies from which the lower courts may borrow. If anything, those Acts are even more persuasive on the precise point at issue in this case—standing. The statutes speak with one voice; each requires the personal representative or legal representative of the decedent to bring the action.[4] This clear expression of Congressional intent mandates that this *Moragne*-type action should be governed by the same rule.

The advantages inherent to a uniform rule as to who may sue or settle a claim for a maritime death are so obvious as to require no enumeration. In the absence of any persuasive reason for the introduction of an anomaly into the maritime law, the consistent pattern of the Congressional enactments controls.

The cases cited by the appellant are inapposite to the question at hand. In Dennis v. Central Gulf Steamship Corp., 453 F.2d 137 (5th Cir. 1972), the court specifically noted that

> *In limine* we think it important to point out that [defendant] does not challenge the right of decedent's daughter . . . to bring this suit. The only issue raised is the proper measure of her damages.

453 F.2d at 139. Thus, the question before this court was not put in issue in *Dennis*. Moreover, *Dennis* dealt only with the issue of uniformity as to the elements of damage properly recoverable under the various maritime causes of action. Rather than providing support for the appellant's position, *Dennis* may properly be viewed as authority for the proposition that the question at issue in this case should be resolved in a manner so as to create uniformity among the various actions available to the injured marine worker as the following language indicates:

> Even if a situation exists where the applicable state law does not provide damages for decedent's pain and suffering for a wrongful death on the high seas, this disparity does not destroy the uniformity mandated in Moragne. *The "uniformity" that is fundamental in maritime law has to do with the bases of liability, not with differing elements of damages that may be recoverable in differing circumstances with differing classes of beneficiaries.*

453 F.2d at 140. (Emphasis added.)

Greene v. Vantage Steamship Corporation, 466 F.2d 159 (4th Cir. 1972), also cited by the appellant, may be distinguished on the same grounds as *Dennis*.

In light of our resolution of this threshold question, there is no necessity to examine the appellee's other contentions as to the appropriateness of *Moragne*-type relief.

The judgment of the court below is in all respects

Affirmed.

---

1. 46 U.S.C.A. § 688 (1958).
2. 46 U.S.C.A. § 761 (1958).
3. 33 U.S.C.A. § 901 et seq. (1970).
4. 33 U.S.C.A. § 905 (1970); 46 U.S.C.A. § 761 (1958); 46 U.S.C.A. § 688 (1958).