505 F.2d 517
 Complaint of CAMBRIA STEAMSHIP CO., a corporation, as owner
and Bethlehem Steel Corporation as demise Charterer in
possession and operator of the STEAMER DANIEL J. MORRELL,
her engines, etc., for exoneration from or limitation of
liability. Claim of Frederick W. RISCHMILLER, Administrator
of the Estate of Henry Rischmiller, Appellant,
v.
Dorothy M. DAHL, Widow, Administratrix of the Estate of
George M. Dahl, Deceased, Appellee 73-1349.
Claim of Chester E. GORDON, Administrator of the Estate of
Arthur I. Crawley, Deceased, Appellant,
v.
Dorothy M. DAHL, Widow, Administratrix of the Estate of
George M. Dahl, Deceased, Appellee 73-1350.
 Nos. 73-1349, 73-1350.
 United States Court of Appeals, Sixth Circuit.
 Decided Oct. 30, 1974, Certiorari Denied March 17, 1975, See
95 S.Ct. 1399.
 
 Ned L. Mann, Cleveland, Ohio, Richard A. Grimm, Jr., Buffalo, N.Y., and J. Harold Traverse, Cleveland, Ohio for appellant.
 Mortimer Riemer, Cleveland, Ohio, David Scribner, Pressman & Scribner, New York City, Abraham E. Freedman, New York City, Harry E. Lorenzo, Lorenzo & Lorenzo, Buffalo, N.Y., Woodrow R. Bugge, Dollar Bay, Mich., Victor E. Manz, Carl S. Feinsinger and Desmond & Drury, Buffalo, N.Y., Victor G. Hanson, Detroit, Mich., Ned L. Mann, Cleveland, Ohio, Zweig, Taback & Remer, Detroit, Mich., Richard A. Grimm, Jr., Grimm & Grimm, Buffalo, N.Y., Hayes & Hayes, N. Wilkesboro, N.C., Courtney, Courtney & Gruesen, Duluth, Minn., Eugene L. Bleiweiss, Cleveland, Ohio, Sheldon & Warren, Ashtabula, Ohio, Anthony J. Colucci, Block, Colucci, Callanan & Crangle, Buffalo, N.Y., Thomas G. Poulos, Niagara Falls, N.Y., William J. Syring, Toledo, Ohio, Harney B. Stover, Jr., Milwaukee, Wis., Howard W. Bernstein, Dworken & Bernstein, S. Eldridge Sampliner, Laurence J. Hoch, Dworken & Bernstein and William C. Todia, Cleveland, Ohio, for appellees.
 Before WEICK, LIVELY and ENGEL, Circuit Judges.
 ENGEL, Circuit Judge.
 
 
 1
 In Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Supreme Court overruled The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886) to create for the first time a non-statutory cause of action for wrongful death based upon unseaworthiness.[1] Moragne deliberately left the shaping of the new action to 'further sifting through the lower courts in future litigation.' 398 U.S. at 408, 90 S.Ct. at 1792. Specifically, the Court in Moragne left unanswered the question of who were to be the beneficiaries of the newly created maritime right and what elements of damages were to be recoverable, but suggested that the court would not be without 'persuasive analogy' in the general maritime law as well as state and federal wrongful death acts, as they endeavored to resolve the 'subsidiary issues' left open by Moragne. We consider two of those issues in these consolidated appeals.
 
 
 2
 In the appeal of Rischmiller, we consider whether an adult and non-dependent brother, as sole surviving next of kin, can maintain a Moragne action to recover damages for his loss of prospective inheritance.
 
 
 3
 In the appeal of Crawley's Estate, as represented by appellant Gordon, administrator of that estate, we consider whether the wrongful death action created by Moragne should be an action for 'loss to the estate' of the deceased, measured by the amount the deceased would have accumulated out of his earnings during the period by which his life expectancy was shortened, and recoverable irrespective of whether the decedent is survived by next of kin or other beneficiaries.
 
 
 4
 The district court below disallowed both Gordon's and Rischmiller's claims. In re Cambria Steamship Company, 353 F.Supp. 691 (1973). We affirm.
 
 
 5
 On November 29, 1966, the S.S. Daniel J. Morrell, a Great Lakes bulk cargo carrier, broke in two and sank in Lake Huron within the coastal waters of the State of Michigan. Among the twenty-eight men who perished in the disaster were Arthur I. Crawley, Captain of the Morrell, and Henry Rischmiller, a crew member.
 
 
 6
 Following the loss, the owners of the ship brought an action for exoneration or limitation of liability in the United States District Court for the Northern District of Ohio. After notice, interested claimants filed answers to the complaint alleging that the ship was unseaworthy and also filed individual claims for recovery. The case was eventually settled as to liability and the vessel owners paid into the registry of the court the agreed sum of $2,750,000, out of which all claims were to be paid. Among the claimants were appellant Frederick I. Rischmiller who made claim for the wrongful death of his brother Henry, and appellant Chester E. Gordon, who, as administrator of the estate of the deceased Captain Crawley, filed a claim on behalf of the latter's estate.
 
 
 7
 To determine the validity and amount of the several claims, the district court appointed two special masters who thereafter reported their findings to the court, which entered final judgment on February 3, 1973. The judgment included determinations that neither the brother of Rischmiller, nor the administrator of Captain Crawley's estate was entitled to recover damages representing loss of prospective inheritance, or loss to the estate itself.[2]
 
 
 8
 Henry Rischmiller was a wheelsman aboard the Morrell. At the time of his death he was 34 years old, unmarried, and earned over $7,000 per year. He left surviving him only his brother Frederick who was admittedly self-supporting and independent. Frederick filed his claim in the district court action for loss of inheritance caused by the untimely death of his brother. The masters found that it was likely that Henry would have continued working until age 65 at the latest, and would have accumulated substantial savings in the meantime. They further found that Frederick Rischmiller would probably have survived Henry and been his sole heir, and that the present value of the additions to Henry's estate which would ultimately have been inherited by Frederick but for the wrongful death was $48,667.67. The Rischmiller claim was therefore put at that sum, but was disallowed by the masters and the trial judge because Frederick was a non-dependent collateral relative.
 
 
 9
 Arthur I. Crawley was Captain of the Morrell. No claim was established that his conduct in any way contributed to the unseaworthiness or loss of the vessel. Forty-seven years of age at the time of his death, Crawley had never married and he was survived by two brothers and four sisters, all of whom were older than he. One brother died after Crawley's death, leaving children, but none of the brothers or sisters, or their children, were in any way dependent upon Arthur. Captain Crawley's income far exceeded his expenses and, in the ten years prior to his death, his savings had averaged 34.9 per cent of his income. Appellant Chester E. Gordon was appointed administrator of Captain Crawley's intestate estate and made claim in the district court on the theory of a 'loss of estate' due to the wrongful death. The special masters computed such loss as reduced to present value, at $239,189.59. This last sum, however, they disallowed for the reasons stated in disallowance of the Rischmiller claim, and because Captain Crawley, as the youngest in his family, would probably have outlived his brothers and sisters, making the likelihood that they or the children would in fact have inherited his estate, even more speculative.
 
 
 10
 While the two appeals proceed upon somewhat different theories, the ultimate recipients of any damages in both would be non-dependent collateral relatives, and the amount recovered would be measured by a reduction to present value of the amount of any accumulation of earnings which would have been added to decedent's estate had he lived out his normal life expectancy.[3]
 
 
 11
 Appellant Rischmiller urges us to apply the state law of Michigan[4] because the Morrell sank in its waters. Appellees urge that we simply borrow the schedule of beneficiaries from the Death on the High Seas Act.[5] We reject both approaches. The decisions following Moragne, while following the mandate of that case to seek guidance from state and federal statutes, have endeavored generally to develop a uniform body of federal law, neither borrowing automatically from federal statutory provisions, nor applying any particular state law.[6]
 
 
 12
 In Sea-Land Services v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the Supreme Court more specifically defined the nature of the action created by Moragne. It first addressed itself to the question of whether a Moragne action could be maintained by a widow, although her husband before his death had already recovered damages for his injuries sustained aboard petitioner's vessel. While recognizing that 'a majority of the courts interpreting state and federal wrongful death statutes have held that an action for wrongful death is barred by the decedent's recovery for injuries during his lifetime', 414 U.S. at 579, 94 S.Ct. at 812, Mr. Justice Brennan, speaking for a majority of the Supreme Court, ruled that Moragne created a wholly new uniform and non-statutory federal cause of action for maritime death. Seeking guidance from existing federal and state statutory law, but conceiving itself bound by neither, the Supreme Court ruled that the cause of action thus created was independent of and in addition to any action which the decedent may have had for his personal injuries, and was thus not barred by the pre-death recovery of the decedent.
 
 
 13
 A majority of the Court in Gaudet, supra, also held that the new cause of action permitted recovery by the dependents of the deceased for loss of support, services and society as well as damages for funeral expenses, but not for grief. In permitting damages for loss of society, the Court provided relief that is generally not available under the Death on the High Seas Act.[7] While noting that a majority of the states recognize loss of society,[8] the Court ultimately based its ruling on the character of the maritime law itself.
 
 
 14
 'But in any event, our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction.' 414 U.S. at 588, 94 S.Ct. at 816.
 
 
 15
 In our approach to the issues in this case, we believe we should be guided by those general principles which are set forth in Sea-Land Services v. Gaudet, supra, as defining the nature of the action and remedy created by Moragne.
 
 LOSS TO ESTATE
 
 16
 Recognizing the unique opportunity which rests in the courts to fashion new rights and remedies under Moragne, counsel for Captain Crawley's estate urges that we adopt a rule obtaining by statute in a minority of the states which provides a right of recovery for loss of the estate itself, apart from whether there exist any surviving next of kin.[9]
 
 
 17
 The fundamental difference between loss to survivor statutes and loss to estate statutes is that:
 
 
 18
 'Whereas most loss to survivors statutes will permit either no recovery at all or only a small measure of nominal damages, or special damages, such as medical or funeral expenses, in cases where decedent is not survived by any statutory beneficiary, most loss to the estate statutes permit the action to be maintained and allow recovery of the full measure of the loss to the estate notwithstanding the fact that decedent is survived by no next of kin or statutory beneficiary.' Speiser, Recovery for Wrongful Death (1966), at p. 251.
 
 
 19
 This argument is particularly necessary to the claim of the Crawley estate since no brother or sister would probably have survived Captain Crawley, he being the youngest, and we recognize some merit in it. Such an approach in essence measures the net value of the life which was wrongfully taken, and in measuring the responsibility of the tortfeasor thereby, provides a simpler means of computing damages. It also avoids what is claimed to be an unconscionable result where a valuable life is taken, but there exists no obligation on the part of the tortfeasor to pay for it because no survivor could make claim for the loss of it.
 
 
 20
 We reject this view, however, because it has commended itself to so few other jurisdictions, and because its fundamentally punitive approach is inconsistent with the expressed compensatory philosophy of the maritime law.
 
 
 21
 As concepts of compensation for humanitarian purposes have grown, and with them an erosion of the barriers to recovery based on fault concepts,[10] we believe the courts have as well moved away from ideas that damages ought to be punitive rather than compensatory.[11]
 
 
 22
 None of the federal wrongful death statutes premises recovery on losses sustained by the estate, but each provides a specified list of beneficiaries for whose benefit the action is to be brought.[12] The Supreme Court itself recognized, in reliance upon Speiser, supra, and other sources, that 44 states and territories measure damages by losses sustained by beneficiaries.[13]
 
 
 23
 While a few of those jurisdictions measuring damages by loss to beneficiaries permit an action on behalf of the estate where the decedent is not survived by any statutory beneficiaries, and a few other as noted earlier, measure all losses by loss to the estate, the majority do not provide for this type of recovery.[14] Thus, while appellant is not without some authority for the position urged, we hold the better rule to be that the action exists primarily for the benefit of individual beneficiaries, and general losses to the estate are not recoverable. Moragne and Sea-Land Services v. Gaudet speak consistently in terms of dependents:
 
 
 24
 'In overruling The Harrisburg, Moragne ended these anomalies by the creation of a uniform federal cause of action for maritime death, designed to extend to the dependents of maritime wrongful death victims admiralty's 'special solicitude for the welfare of those men who under (take) to venture upon hazardous and unpredictable sea voyages.' Moragne, supra, 398 U.S. at 387, 90 S.Ct. at 1780. Our approach to the resolution of the issue before us must necessarily be consistent with the extension of this 'special solicitude' to the dependents of the seafaring decedent.' Sea-Land Services v. Gaudet, 414 U.S. at 577, 94 S.Ct. at 811. In our view, the liberal and humanitarian character of maritime proceedings as expressed in Moragne and Gaudet, supra, contemplates solicitude for dependents, not inanimate estates. In so holding, we do not rule that certain specialized losses such as funeral expenses may not nonetheless be recovered by the estate, as is the case in several states premising primarily recovery on a beneficiary rather than an estate theory.[15]
 
 NON-DEPENDENT BROTHER AS BENEFICIARY
 
 25
 Many of the reasons for rejecting the claim of Crawley's estate apply as well to the claim of Frederick Rischmiller.
 
 
 26
 We recognize at the outset that loss of prospective inheritance is frequently held a proper element of damages which are awarded qualified beneficiaries. Thus it is allowed under the Death on the High Seas Act, National Airlines, Inc. v. Stiles, 268 F.2d 400 (5th Cir. 1959) and the Federal Employers Liability Act, see Martin v. Atlantic Coast Line R. Co., 268 F.2d 397 (5th Cir. 1959), and hence would be available under the Jones Act. See, Cleveland Tankers v. Tierney, 169 F.2d 622 (6th Cir. 1948).
 
 
 27
 These acts, however, specifically limit recovery to parents, children, spouse or dependent next of kin. Non-dependent collateral relatives are not included.[16]
 
 
 28
 The reason for the different treatment, we conclude, lies in the nature of the relationship existing between the claimant and the decedent. In awarding loss of inheritance to a widow, the court in National Air Lines v. Stiles, supra, observed:
 
 
 29
 'It is as likely that a wife in these circumstances who did in fact inherit her husband's entire estate on his untimely death, would continue to be the natural object of his affection and beneficence if he lived out his expectancy and made substantial additional accumulations as that he would continue to give her the kind of support the defendant admits (he) would continue.' 268 F.2d at 403.
 
 
 30
 State law provides less guidance. In a large number of states, loss of prospective inheritance is recognized as a proper element of damages.[17] Except in 'loss of estate' jurisdictions, however, there is little uniformity among the state acts.[18] We have, in fact, been shown no case in which a non-dependent collateral relative was awarded damages for this loss.
 
 
 31
 We remain unconvinced that the humanitarian principles of maritime law which led the Supreme Court in Sea-Land Services v. Gaudet, supra, to compensate a widow for loss of society, should lead us to hold that a non-dependent and collateral relative should recover for loss of an inheritance, based solely upon his legal relationship to the deceased as next of kin. We agree with appellants that the amount of a deceased's prospective accumulations may not be too speculative to ascertain, see O'Toole, supra, and indeed, the special masters here experienced little difficulty in determining them upon the proofs. An even greater uncertainty, however, is whether the particular claimants would ultimately have received any benefit themselves. As the special masters observed, in discussing the likelihood that Crawley's collateral relatives would have ultimately inherited his accumulations:
 
 
 32
 'We are asked to assume that he would have divided his estate equally among each branch of his family, that he would have given no portion of his estate to charity or to individuals outside the family, and that he would have continued saving, even though the only individuals who would have benefited from such saving would be collateral relatives. All of these assumptions may be true; or all may not be true. 'These assumptions are by their very nature more speculative ones than those we are required to make in dependency claims. In dependency claims there is either a legal or moral obligation to support the dependent, and there is a history of the amount of contribution and its frequency. This pattern of established conduct forms the basis for a prediction of future conduct.' Comfort, companionship and society, recognized in Gaudet, supra, go to the very heart of family life, and their loss by family members is genuinely felt, thus justifying the intervention of the humanitarian maritime law. On the other hand, loss of prospective inheritance by one whose hopes of that inheritance hinge upon the fortuity of a man remaining unmarried and childless throughout his life, is not an injury capable of comparison with the losses sought in Gaudet. The mere accident of blood relationship with nothing more does not itself call for that special solicitude which the maritime law holds for those injured within its jurisdiction.
 
 
 33
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), held that the common law of admiralty, recognized no cause of action for wrongful death. The Court in Moragne recognized that the doctrine applied in The Harrisburg was based upon an antiquated English doctrine of felony merger, which the Court found to be no longer viable in this century. According to the felony merger doctrine, the common law did not allow civil recovery for an act that constituted both a tort and a felony. Since all intentional or negligent homicide was felonious, and conviction brought forfeiture of the felon's estate, there could be no civil suit for wrongful death. See Moragne v. States Marine Lines, 398 U.S. 375, at 382, 90 S.Ct. 1772. In creating the new cause of action, the Supreme Court recognized that wrongful death statutes had been enacted in every state in the union, and that such a remedy was provided by several federal statutes. For an excellent discussion of the development of wrongful death remedies in this country and in England, see Moragne, supra, at 381-388, 90 S.Ct. 1772
 
 
 [2]
 Claims were assessed and allowed, however, to all claimants, representing damages for pain and suffering of the decedent, in the amount of $7,500. Since the total of all claims allowed exceeded the fund, this amount, as well as others, was reduced proportionately
 
 
 [3]
 In Speiser, Recovery for Wrongful Death (1966), at 182, the difference between these two theories is described:
 The difference between recovery by decedent's next of kin for loss of inheritance under the loss to survivors type death statute, and recovery for loss of inheritance under statutes which measure damages by loss to the estate, was described as follows by McCormick: 'This (element of damage) is closely reminiscent of the 'loss to the estate' basis of recovery, but is different in that the claim here is founded not only on the probability of accumulation by the deceased, but is also conditioned on the probability that he would have left it, by will or inheritance, to the statutory beneficiaries.'
 We note that we are not asked to determine here who is the proper party to bring a wrongful death action under the general maritime law. But see Futch v. Midland Enterprises, Inc., 471 F.2d 1195 (5th Cir. 1973), where it was held that the action must be brought by the personal representative of the decedent.
 
 
 [4]
 M.C.L.A. 600.2922. We doubt in any event that application of Michigan law would have resulted in recovery for these appellants. While non-dependents have been permitted to recover for loss of society in Michigan, Smith v. City of Detroit, 388 Mich. 637,202 N.W.2d 300 (1972), indicating that dependency may not be an absolute requirement, the Michigan Supreme Court has also held that the loss of prospective inheritance is not a proper element of damages under the Michigan Act. Baker v. Slack, 319 Mich. 703, 30 N.W.2d 403 (1948). We need not consider whether Baker v. Slack would be applied in Michigan today were the question to arise since we conclude that neither the law of Michigan nor that of any state is controlling
 
 
 [5]
 46 U.S.C. 761, which provides:
 Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shores of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child or dependent relative against the vessel, person, or corporation, which would have been liable if death had not ensued.
 
 
 [6]
 See, e.g., Spiller v. Lowe & Associates, 466 F.2d 903 (8th Cir. 1972) (step-child a proper beneficiary under wrongful death action); Greene v. Vantage Steamship Corp., 466 F.2d 159 (4th Cir. 1972) (funeral expenses and pain and suffering of deceased recoverable); Futch v. Midland Enterprises, Inc., 471 F.2d 1195 (5th Cir. 1973) (personal representative is proper plaintiff in action for wrongful death); Petition of M/V Elaine Jones, 480 F.2d 11 (5th Cir. 1973) (demages for grief not recoverable)
 
 
 [7]
 It has generally been held that recovery for loss of companionship and society is not permitted under the Death on the High Seas Act. First National Bank in Greenwich v. National Airlines, Inc., 288 F.2d 621 (2nd Cir. 1961)
 
 
 [8]
 Sea-Land Services v. Gaudet, 414 U.S. 573, 587, and note 21, 94 S.Ct. 806
 
 
 [9]
 See Speiser, Recovery for Wrongful Death (1966), 3.2, where the author indicates that several states measure damages solely by loss to the estate, while a few others, e.g. Florida, provide that a claim for estate loss may be made where there are no surviving statutory beneficiaries
 
 
 [10]
 See, e.g. Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944), where the Supreme Court held that a shipowner's duty to provide a seaworthy ship is absolute, and not satisfied by due diligence
 
 
 [11]
 In an admiralty action it has been held that an individual claimant may not recover punitive damages absent a showing of gross negligence, actual malice or criminal indifference. Thus, where the action is predicated upon unseaworthiness alone, punitive damages are not recoverable. See In re Marine Sulphur Queen, 460 F.2d 89 (2nd Cir. 1972), cert. dinied 409 U.S. 982, 93 S.Ct. 318, 34 L.Ed.2d 246 (1972)
 
 
 [12]
 See 46 U.S.C. 761; (text provided in note 4, supra). See also 46 U.S.C. 688 (Jones Act) which incorporates by reference the recovery provisions of the Federal Employers' Liability Act, 45 U.S.C. 51, which provides in pertinent part:
 Every common carrier by railroad . . . shall be liable in damages to any person suffering injury . . . or in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee . . .
 
 
 [13]
 414 U.S. at 587, n. 21, 94 S.Ct. 806
 
 
 [14]
 See Speiser, supra, at 63-66
 
 
 [15]
 See, e.g. Illinois Revised Stats. ch. 70 2, where it is provided that the estate may recover up to $900 for hospitalization, medical and funeral expenses, and other administrative costs, where no beneficiary survives. See also Speiser, supra, at 66
 
 
 [16]
 See Footnotes 5 and 12, supra
 
 
 [17]
 O'Toole v. United States, 242 F.2d 308 (3rd Cir. 1957), and cases cited in Annotation following Martin v. Atlantic Coast Line, supra, 91 A.L.R.2d 477; Speiser, supra, at 182-183
 
 
 [18]
 See generally, the Annotation following Schwarz v. Gage, Mo.App., 417 S.W.2d 33, 31 A.L.R.3rd 371, 379, indicating that recovery by collateral relatives is variously limited or precluded in a number of states by dependency and pecuniary loss requirements. There is reflected no general trend in the states regarding recovery by such persons