In the Matter of the Complaint of
**MIDLAND ENTERPRISES, INC.**

**HARTLEY MARINE CORPORATION,**
doing business as R & W Marine, for
exoneration from or limitation of, liability, a corporation, Plaintiffs–Appellants,

v.

Jana Marie **BRASHER**, as Administratrix
of the Estate of Christopher Dale
Brasher, deceased, on behalf of herself
as Widow, on behalf of her children
John Christopher Brasher and Robert
W. Brasher, minors, Claimant–Appellee.

No. 88–6102.

United States Court of Appeals,
Sixth Circuit.

Argued June 16, 1989.
Decided Sept. 29, 1989.

Elmer Price argued, St. Louis, Mo., M. Greg Rains, McMurry & Livingston, Paducah, Ky., John R. Halpern, Gary Sacks, Goldstein & Price, St. Louis, Mo., for plaintiffs-appellants.

Sandor Korein, John C. Torjesen, Carr, Korein, Schlichter, Kunin & Montroy, St. Louis, Mo., John T. Carneal, Paducah, Ky., for claimant-appellee.

Before KENNEDY, GUY and NORRIS, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

On September 1, 1986, a collision occurred on the Tennessee River within the State of Tennessee involving the M/V Mike Creditor and its tow of fifteen barges and an unmanned jon boat. As a result of the collision, Christopher Dale Brasher was killed. Brasher had been mussel diving along the banks of the river.

Plaintiffs (Midland), the owners of the M/V Mike Creditor, filed a complaint on September 19, 1986, for exoneration from, or limitation of, liability. 46 U.S.C. § 181, et seq. Midland also posted a bond in the amount of $146,461 allegedly equal to the value of the M/V Mike Creditor and its freight, in accordance with Federal Rules of Civil Procedure, Supplemental Rule F. As is required by the provisions of 46 U.S.C. § 185, the district court then entered an order restraining prosecution of any suits against Midland arising out of the accident, and requiring that any claims arising from the collision be filed on or before December 20, 1986.

On October 24, 1986, claimant Jana Marie Brasher filed a claim on behalf of the estate of Christopher Dale Brasher. The claim alleged wrongful death and claimed pecuniary loss and loss of society on behalf of Jana Marie Brasher, John Christopher Brasher, age 3, and Robert W. Brasher, age 4, who are the widow and children of Christopher Dale Brasher. At the same time, an answer to Midland's complaint was also filed denying Midland's right to limit its liability, and also contesting the valuation placed on the M/V Mike Creditor and its freight. The Brasher claim was the only claim filed. Claimant then proceeded to file a motion seeking modification of the earlier restraining order so that she could prosecute her claim to judgment before a jury in an appropriate forum of her choice. This motion was granted on August 30, 1988, over the objections of plaintiffs and this appeal followed.

I.

In order to understand the issues presented in this appeal, it is necessary first to examine the "Limitation of Vessel Owner's Liability Act" (Limitation Act), 46 U.S.C. § 181, et seq. The Act confers upon a vessel owner, when loss or damage occurs without its privity or knowledge, the right to limit its liability to the value of its interest in the vessel and the vessel's pending freight. The vessel owner may seek judgment for exoneration from or limitation of liability and, upon the filing of the complaint and the depositing of adequate surety for the ship and her freight, the district court must enjoin all other actions which relate to the subject of the limitation proceeding and require all persons who have claims to assert them in the district court. S & E Shipping Corp. v. Chesapeake & O. Ry., 678 F.2d 636, 642 (6th Cir.1982). The federal court's jurisdiction over the limitation action is exclusive. Langnes v. Green, 282 U.S. 531, 540, 51 S.Ct. 243, 246, 75 L.Ed. 520 (1931). The historical purpose of the Act, which was initially passed in 1851, was to encourage the development of a private maritime fleet and to protect the fledgling fleet from ruinous liability. The wrongful death claim filed in this case presents an action arising under, and governed by, federal maritime law because the death occurred on the Tennessee River within the admiralty jurisdiction of the United States. Exclusive admiralty jurisdiction was conferred by Con-

gress upon the federal district courts. 28 U.S.C. § 1333 provides in pertinent part:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*

(Emphasis added).

■ One of the remedies saved to suitors was the right to trial by jury and herein lies the tension between the Limitation Act which involves non-jury equity proceedings, and claims for personal injury or death which typically allow for jury trials. The courts have resolved this tension, to some degree at least, by allowing claimants to pursue their claims in the forum of their choice before juries under two sets of circumstances. First, if the limitation fund exceeds the aggregate of all claims, then claimants must be allowed to seek the forum of their choice. *Lake Tankers Corp. v. Henn,* 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957). As we stated in *S & E Shipping,* 678 F.2d at 643:

> Where the limitation fund is sufficient to pay all potential claims, however, a *concursus* is unnecessary because the claimants need not compete among themselves for larger portions of a limited fund. This exception to the *concursus* procedure protects the claimant's right to a jury trial in the forum of his choice without undermining the Limitation Act's policy of limiting the shipowner's liability to the value of the vessel and its freight.

Second, if there is only one claimant, then the district court must dissolve its stay of other proceedings. *Langnes v. Green,* 282 U.S. at 541, 51 S.Ct. at 247.

■ The right of a claimant to pursue a claim in the forum of choice is not unfettered, however. Even in cases in which there is only one claimant or the limitation fund exceeds the aggregated claims, the district court will not lift the stay unless the claimant formally concedes that the district court has the exclusive jurisdiction to decide all limitation of liability issues. *Ex parte Green,* 286 U.S. 437, 52 S.Ct. 602,

76 L.Ed. 1212 (1932). Additionally, the claimant must concede that the value of the vessel and freight will be the limit of the fund available and that no res judicata arguments will be made based upon any state court judgment. *Universal Towing Co. v. Barrale,* 595 F.2d 414 (8th Cir.1979).

Recognizing these prerequisites to the lifting of the stay, claimant, at the time she filed her motion to modify the stay, also filed the following stipulations:

> Jana Marie Brasher, Administratrix of the Estate of Christopher Dale Brasher, deceased, stipulates in this case in support of her Motion to Modify Stay, as follows:
>
> 1. That this Court has full and exclusive jurisdiction to determine the value of the M/V MIKE CREDITOR sought to be limited in these proceedings or the value of any limitation fund which may be necessary for the satisfaction of claims against its owners.
>
> 2. That this Court has full and exclusive jurisdiction to determine whether or not the vessel's owner has the right to limit its liability to this claimant.
>
> 3. That any claim of res judicata based on judgment in any other Court with respect to any issue of limitation of liability reserved to this Court is waived by this claimant.

Plaintiffs objected to removal of the stay, contending to the district court that: (1) this was not a "single claim" case, but one that involved multiple claims, since there were claims on behalf of the widow and two minor children; and (2) that claimant's stipulations were inadequate since she did not concede that the *value* attributed by Midland to the boat and its freight was the correct and final value. These two contentions are the appellate issues presented and we address them individually.

## II.

### A. The Single vs. Multiple Claim Issue

■ In support of its argument that multiple claims are presented, Midland cites a number of cases holding that a single inju-

ry or death can generate multiple claims.[1] We have no quarrel with this proposition, but it is not the issue before this court. In the district court, Judge Johnstone resolved this issue by looking to the policy behind the Limitation Act. He concluded that at least part of the policy was to provide one federal forum for the resolution of *competing* claims. Judge Johnstone then concluded that a mother and children bringing a claim for damages growing out of the death of the husband and father does not present a situation involving competing claims. Although we do not disagree with this conclusion, we prefer to resolve the issue by way of a somewhat different analysis.

We first note that the wrongful death action here involves a widow and two minor children. We limit our analysis to the specific factual situation. Whether the analysis might differ, for example, if the claim was made by a widow and two emancipated children, we leave for another day.

We next note that we did not have, as a part of this record, the complaint filed in state court as a result of the lifting of the restraining order by the district court. Therefore, the precise contours of the claim were not ascertainable as of the time of oral argument.[2] The claim filed in the limitation proceeding is brief and quite general, and does not indicate the details of the recovery sought—other than it being for a wrongful death. Such is not always the case. In many Limitation Act cases, the claimant has already filed a state court action before the Limitation Act proceeding is instituted. Indeed, the Act speaks in terms of the limitation proceeding being filed *after* receipt of a written notice of a claim.

Not knowing the precise nature of the state action would be less troubling if it were clearer what form the state action must take. Relevant to this issue we stated in *In re Cambria S.S. Co.*, 505 F.2d 517 (6th Cir.1974), *cert. denied sub nom. Gordon v. Dahl*, 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975):

> In *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Supreme Court overruled *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886) to create for the first time a non-statutory cause of action for wrongful death based upon unseaworthiness. *Moragne* deliberately left the shaping of the new action to "further sifting through the lower courts in future litigation." 398 U.S. at 408, 90 S.Ct. at 1792. Specifically, the Court in *Moragne* left unanswered the question of who were to be the beneficiaries of the newly created maritime right and what elements of damages were to be recoverable, but suggested that the court would not be without "persuasive analogy" in the general maritime law as well as state and federal wrongful death acts, as they endeavored to resolve the "subsidiary issues" left open by *Moragne*.

505 F.2d at 519 (footnote omitted).

One of the most significant occurrences of the "shaping of the new action" was a decision of the Supreme Court issued just prior to our decision in *Cambria*, in which the Court fleshed out the nature of the recovery permitted in a *Moragne*-type wrongful death action. In *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 591, 94 S.Ct. 806, 818, 39 L.Ed.2d 9 (1974), the Court, over a strong dissent, made it clear that claimants in a wrongful death action, in addition to damages for pecuniary loss, could recover "for loss of support, services, and society [as well as for] funeral expenses."[3]

---

1. *See, e.g., Dammers & Vanderheide v. Corona*, 836 F.2d 750, 756 (2d Cir.1988) (loss of consortium claim separate from injury claim of spouse); *Ray v. Lykes Bros. S.S. Co.*, 805 F.2d 552 (5th Cir.1986) (employer's claim for compensation benefits paid is separate from employee's injury claim).

2. At the request of the panel, the state court pleadings were filed with this court subsequent to oral argument.

3. This holding was inconsistent with and implicitly overruled our earlier holding in *United States Steel Corp. v. Lamp*, 436 F.2d 1256 (6th Cir.1970), *cert. denied*, 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153 (1971).

The relevance of *Gaudet* to the instant case is that Midland, in making its "multiple claim" argument, relies primarily on cases which hold that where a seaman sues for his injuries and his wife sues for loss of consortium—multiple claims are presented since, pursuant to *Gaudet*, the claim for loss of consortium is cognizable. *See, e.g., Dammers & Vanderheide v. Corona*, 836 F.2d 750, 756 (2d Cir.1988); *S & E Shipping*, 678 F.2d at 644.[4] Midland thus argues that since a claim for loss of society is recognized as a separate claim, then the claims of the widow and the two minor children for loss of society are, in effect, three claims. We disagree for two reasons.

First, the only person who can bring a *Moragne*-type wrongful death action is the personal representative of the deceased. *Futch v. Midland Enters., Inc.*, 471 F.2d 1195 (5th Cir.1973). Since there is only one claim, that of the personal representative, by definition we do not have competing claims. There can only be one judgment rendered on this claim. It is true that this judgment may have to be split among beneficiaries but this does not turn the claim into multiple claims. In accord with this conclusion are two cases relied on by claimant—*In re Mucho K, Inc.*, 578 F.2d 1156 (5th Cir.1978), and *Baltimore Sports & Recreation, Inc. v. Riley*, 1987 A.M.C. 1099, 1986 WL 15672 (D.Md.1986). Although both of these cases provide little by way of rationale for this conclusion, we find them nonetheless more persuasive authority than the loss of consortium cases relied upon by Midland.

The second reason why we conclude there is only one claim is that this action by the widow is undertaken pursuant to her appointment as personal representative of the estate under the applicable Tennessee statute. In *Moragne*, the Court stated that

in fashioning the contours of the new maritime wrongful death remedy, the courts would find "persuasive analogy for guidance" in the accumulated experiences under state wrongful death statutes and the Death on the High Seas Act, 46 U.S.C. § 761, *et seq. Moragne*, 398 U.S. at 408, 90 S.Ct. at 1792. We therefore find it appropriate to look to the Tennessee wrongful death statute which gives a single cause of action to the personal representative of the decedent.[5] In *Jamison v. Memphis Transit Management Co.*, 381 F.2d 670 (6th Cir.1967), we had occasion to construe the Tennessee wrongful death statute and stated:

> The district court correctly held that the Tennessee wrongful death statute creates one, and only one, right of action in the survivors of decedent, no matter how many persons may be entitled to share therein. *Wilson v. Barton*, 153 Tenn. 250, 254, 283 S.W. 71.

*Jamison*, 381 F.2d at 673; *see also Williams v. Baxter*, 536 F.Supp. 13, 17 (E.D.Tenn.1981).[6]

## B. The Stipulation as to Value Issue

Midland argues that claimant must stipulate that the $143,460.74 value placed on the ship and freight by Midland is correct and sets the ultimate limit of any monetary recovery. In support of this proposition, Midland cites to *Ex parte Green*, 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212; *Jefferson Barracks Marine Serv., Inc. v. Casey*, 763 F.2d 1007 (8th Cir.1985); *S & E Shipping*, 678 F.2d 636; and *In re Red Star Barge Line, Inc.*, 160 F.2d 436 (2d Cir.), *cert. denied*, 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859 (1947). When carefully read, however, these cases do not support Midland's contention.

---

**4.** It is clear from the decided cases that the terms "loss of consortium" and "loss of society" are used interchangeably when discussing this element of a widow's or spouse's damages.

**5.** In requiring wrongful death actions to be brought by the personal representative, Tennessee follows the general rule. "Under most death statutes, the death action may and must be

brought in the name of the personal representative." 25A C.J.S. Death § 58(1).

**6.** This issue is a tempest in a teapot at best. In almost all the cases where the multiple claims-single claim controversy has arisen, it has been resolved by the filing of additional stipulations by the claimant which easily could have been done here. *S & E Shipping*, 678 F.2d 636.

In *Ex parte Green* there is a statement made that "if the value of the vessel be not accepted as the limit of the owner's liability, the federal court is authorized to resume jurisdiction and dispose of the whole case." 286 U.S. at 440, 52 S.Ct. at 603. In *Ex parte Green* the parties *stipulated* in the limitation proceedings to the value of the vessel, and the quoted language refers to claimant's attempt in state court to put in issue the owner's *right* to limited liability. Thus, *Ex parte Green* presents neither the legal issue nor the factual setting with which we deal in the case at bar.

In *S & E Shipping,* we stated that a claimant must "concede that the limitation fund is equal to the value of the vessel and freight. . . ." 678 F.2d at 643 n. 13. Midland misreads this footnote to mean that a claimant must stipulate to the *value* of the vessel and its freight, rather than merely agreeing that whatever value may be ultimately determined sets the outer limitation of liability.

*Jefferson Barracks* is similarly unsupportive of Midland's argument. There is a quote in the case from G. Gilmore & C. Black, *The Law of Admiralty* (2d ed. 1975), which indicates that a claimant must concede the sufficiency of the amount stated in the stipulation of value filed by the shipowner.[7] However, this quote is part of a general review of the procedures that have historically evolved in this type of case and, not being central to the court's holding, is clearly dicta. *Jefferson Barracks,* 763 F.2d at 1010. More significantly, however, the stipulations filed by the claimant which the *Jefferson Barracks* court found to be adequate did *not* concede value. All the claimant conceded was the district court's right to ultimately determine the proper value of the limitation fund.[8] In *In re Red Star Barge Line,* the claimant did concede the value placed on the boat by the owner and this was not an issue in the case.

Claimant, on the other hand, has cited cases which directly support her contention that she must concede the right of the district court to determine value, but not the value itself. These cases include *Anderson v. Nadon,* 360 F.2d 53 (9th Cir. 1956); *Kattelman v. Otis Eng'g Corp.,* 701 F.Supp. 560 (E.D.La.1988); *In re North Lubec Mfg. and Canning Co.,* 647 F.Supp. 1132 (D.Me.1986); and *Baltimore Sports & Recreation,* 1987 A.M.C. 1099, 1986 WL 15672.[9] We find it unnecessary to go into detail on the facts of the above cited cases since we are convinced that they support claimant's contentions. We are equally convinced, however, that this is an issue that has generated a good bit of needless controversy and therefore have decided to set forth a procedure which hopefully will avoid such controversies in the future.

Federal Rules of Civil Procedure Supplement F provides the detailed procedures for the filing of complaints and responses in connection with limitation of liability actions. The rule in F(7) provides a specific procedure for a claimant to challenge the value placed on the ship and its freight by the plaintiffs. The rule, in pertinent part, reads:

(7) Insufficiency of Fund or Security. Any claimant may by motion demand that the funds deposited in court or the security given by the plaintiff be increased on the ground that they are less than the value of the plaintiff's interest in the vessel and pending freight. Thereupon the court shall cause due ap-

7. The quote from Gilmore & Black is suspect. The authors rely heavily on Second Circuit precedents as their authority and the Second Circuit has very recently disavowed the correctness of Gilmore & Black's formulation. *See Dammers & Vanderheide,* 836 F.2d at 758 n. 7.

8. *Jefferson Barracks,* 763 F.2d at 1010, reads in pertinent part:

That upon the dissolution of the Order of Injunction, the District Court sitting in admiralty would retain its exclusive jurisdiction over the issues of (1) Appellees' right to limit liability, (2) the proper value of the Limitation Fund, and (3) all matters affecting the right of Appellees to limit liability herein, and that any decision in the above described state court action would not be *res judicata* as to those issues should they in any manner be embraced by any such decision in state court.

9. *See also Valley Line Co. v. Ryan,* 771 F.2d 366 (8th Cir.1985).

praisement to be made of the value of the plaintiff's interest in the vessel and pending freight; and if the court finds that the deposit or security is either insufficient or excessive it shall order its increase or reduction.

Although the claimant here has filed an answer pursuant to F(5), denying the value placed on the ship and its freight by the owner, the claimant has not followed the procedures outlined in F(7) and filed the type of motion that would compel the court to cause an "appraisement" to be made. We therefore direct that claimant is ordered to either file an F(7) motion forthwith challenging the value or concede the value placed on the vessel and its freight by Midland. If either one of these procedures is followed, the state court action may proceed. We want to make it clear, however, that if an F(7) motion is filed, we are not requiring that the state court action be stayed pending the resolution of the F(7) motion. Although we think it would be of value to both parties to know as soon as possible just what the monetary limit of liability will be, we leave the scheduling details to the good judgment of the district judge.

AFFIRMED AND REMANDED for further proceedings consistent with this opinion.