**Roberta CRUZ, as Personal Representative and Executrix of the Estate of Alfredo Cruz, deceased, Plaintiff,**

v.

**KOREAN AIR LINES CO., LTD., Defendant.**

**No. 83 Civ. 8671 (PNL).**

United States District Court, S.D. New York.

Dec. 2, 1993.

Kreindler & Kreindler, New York City (Milton G. Sincoff and Steven R. Pounian, of counsel), for plaintiff.

Condon & Forsyth, New York City (George N. Tompkins, Jr., Andrew J. Harakas and Jeanine C. Veracoechea, of counsel), for defendant.

## OPINION AND ORDER

LEVAL, District Judge.

Defendant Korean Air Lines (KAL) moves to enforce a settlement agreement reached between counsel for plaintiff and counsel for defendant on June 17, 1992.

### Background

Unless otherwise noted, the following facts are not in dispute. This is one of many wrongful death actions arising from the downing of KAL flight KE007 on September 1, 1983. The action was brought by Roberta Cruz, the surviving widow of Alfredo Cruz, one of the passengers who died on the aircraft, as executrix on behalf of the estate of her deceased husband and on behalf of her five adult children. In November 1983, Roberta Cruz retained Milton Sincoff, of the firm of Kreindler & Kreindler, to represent her in this action, which was filed in late 1983. The complaint includes claims for loss of support, loss of services, loss of companionship, and grief and suffering, all on behalf of Roberta Cruz and the children, and for pain and suffering on behalf of the estate of the decedent.

On January 20, 1992, Roberta Cruz met with Mr. Sincoff and, according to her affidavit,

> authorized Mr. Sincoff to discuss settlement with KAL's lawyers. Mr. Sincoff assured me specifically on January 20, 1992 that no settlement agreement would be considered final until all of the necessary papers were signed and a check had been delivered and deposited.

Roberta Cruz Affidavit ¶ 3. At this same meeting, according to Mr. Sincoff,

the plaintiff and her two children who were present specifically approved of a settlement, if offered by KAL, of $800,000 and, to achieve that goal, specifically approved a higher settlement demand to be submitted to KAL's attorney. The plaintiff also said she would talk to her other children. Two days later, on January 22, Mrs. Cruz telephoned, spoke with Steven R. Pounian, one of the firm's partners who was assisting me, and the plaintiff reported that all agreed to the figures discussed at the conference.

Sincoff Affidavit ¶ 3.

On June 17, 1992, counsel for both parties met to discuss settlement. They agreed on a settlement amount of $800,000. Mr. Sincoff spoke to plaintiff that day, told her of KAL's offer of $800,000, and "she again specifically authorized settlement for that sum." Sincoff Affidavit ¶ 3.[1] According to Roberta Cruz, "I told Mr. Sincoff, in substance, that I was relying on his judgment in this because I have no experience in such matters. I did not realize that the settlement would be concluded immediately based on this telephone conversation." Roberta Cruz Affidavit ¶ 4.

Later that day, Mr. Sincoff sent a letter by facsimile to George N. Tompkins, Jr., counsel for KAL, confirming the settlement. The letter read: "This will confirm your conversations with Lee [Kreindler] in which it was agreed by both of you that Cruz settled for $800,000." Mr. Tompkins sent a facsimile letter to Mr. Sincoff the same day that read, "I refer to your facsimile of June 17, 1992 and confirm our agreement to settle this case for the sum of $800,000."

Mr. Sincoff immediately sent a general release specifying the $800,000 settlement to Roberta Cruz and her five children for their signatures. A month later, he received the general release signed by plaintiff and three of her children. This document released KAL from liability for all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR's heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever.... .

Around the same time, one of the children, Exaltacion Schlossberg, sent him the signed release, but she had inserted a reservation of her father's rights if he was in fact alive; she refused to sign the release without such a reservation. Mr. Sincoff also received a letter signed by plaintiff and four of her children requesting that the settlement check be payable to the plaintiff and the Kreindler law firm, omitting the children. Thereafter, Mr. Sincoff was informed that one of the children, Alfredo E. Cruz, Jr., would not sign the release unless the settlement was substantially higher. Eventually, plaintiff and all the children expressed their desire not to accept the settlement.

KAL then moved to enforce the agreement of June 17, 1992.

### Discussion

■ Settlement is generally viewed as a "positive force, indispensable to judicial administration;" a "settlement is a contract, and once entered into is binding and conclusive." *Janneh v. GAF Corp.*, 887 F.2d 432, 435–36 (2d Cir.1989), *cert. denied*, 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990); *accord Fustok v. Conticommodity Services, Inc.*, 577 F.Supp. 852, 858 (S.D.N.Y.1984). Accordingly, a "district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions,*

---

1. Mr. Sincoff's affidavit notes generally that:

   Before I wrote to the defendant's attorney on June 17, 1992 confirming the settlement for $800,000 ... I was specifically authorized by the plaintiff both that day and previously to accept an $800,000 settlement. In addition, prior to that day, three children gave me that same authorization and I was informed that all the children authorized settlement for $800,-000.

   Sincoff Affidavit ¶ 2.

*Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir.1974) (citing cases); *accord Vari–O–Matic Machine Corp. v. New York Sewing Machine Attachment Corp.*, 629 F.Supp. 257, 258 (S.D.N.Y.1986).

■ The uncontroverted facts here show that a valid and enforceable settlement was reached. The evidence strongly supports KAL's contention that Mr. Sincoff had actual authority from Roberta Cruz to settle the action for $800,000. Although Roberta Cruz's affidavit suggests that she may not have realized Mr. Sincoff would go ahead and reach a final settlement with KAL, she admits that she gave him full authority to negotiate and reach a settlement. Before the court, she stated that, "So when Mr. Sincoff called me in June 17th that a settlement was made for 800,000, I told him, 'Whatever you think best, go ahead.'" Tr. at 53. Accordingly, I conclude that counsel for both sides reached a settlement on June 17, 1992.

Even if Mr. Sincoff were not fully authorized to settle the case, Roberta Cruz subsequently signed a general release on July 20, 1992, agreeing to settle the case for $800,000. She herself therefore agreed to settle the action, and KAL's motion to enforce the agreement should be granted.

■ The children argue that even if their mother settled her claims, *they* never gave Mr. Sincoff authority to settle *their* claims and therefore they should be allowed to litigate those claims. By this argument, the children misconceive their legal status in relation to the claims for their benefit. Although claims existed for their benefit, the children had no authority either to bring or to settle such claims. They are in the position of passive beneficiaries. Roberta Cruz, as the legal representative of the decedent's estate, had the sole authority to bring claims for the children and had full authority to settle those claims, with or without her children's approval. Although there is some difference among the parties as to the statutory framework that governs this case, the applicable substantive law is essentially identical and provides that Roberta Cruz could settle all claims that she was empowered to bring.[2]

■ KAL contends that federal common law governs claims arising under the Warsaw Convention, *see In re Air Disaster at Lockerbie, Scotland, on December 21, 1988*, 928 F.2d 1267, 1278–79 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991), and that therefore the provisions of the Death on the High Seas Act (DOHSA), 46 U.S.C.App. § 761 *et seq.*, govern the issue of who may maintain a claim. Section 761 of DOHSA provides that:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

46 U.S.C.App. § 761.[3] Courts have consistently interpreted the language in § 761 pro-

---

**2.** The children rely on a passage in *In re Korean Air Lines Disaster of September 1, 1983*, 807 F.Supp. 1073, 1080 (S.D.N.Y.1992), stating that the Warsaw Convention "does not limit recovery to the personal representative of the decedent and affirmatively provides for suit by persons other than passengers." I am unpersuaded by this language for two reasons. First, the case cited in support of this passage, *In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1475, 1485–86 (D.C.Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991), does not appear to relate to this issue. Second, the Second Circuit has recently held that the Warsaw Convention preempts state law causes of action arising under it. *In re Air Disaster at*

*Lockerbie, Scotland on December 21, 1988*, 928 F.2d 1267, 1278 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). As the Second Circuit noted, "Two choices are generally available to a court in deciding the law created by a federal cause of action: adopting state law or creating a uniform federal common law." 928 F.2d at 1278. As explained in the text, whether one looks to relevant state law or relevant federal law, the result is the same.

**3.** In addition, 46 U.S.C.App. § 762 provides:

> The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit

viding that the personal representative "may maintain a suit for damages ... for the exclusive benefit" of other claimants to mean that *only* the personal representative may bring the claims of the other claimants. *E.g., Futch v. Midland Enterprises, Inc.,* 471 F.2d 1195, 1196 (5th Cir.1973); *Favaloro v. S/S Golden Gate,* 687 F.Supp. 475, 478–79 (N.D.Cal.1987); *Renner v. Rockwell International Corp.,* 403 F.Supp. 849, 851 (C.D.Cal. 1975), *vacated on other grounds,* 587 F.2d 1030 (9th Cir.1978); *see Benoit v. Fireman's Fund Insurance Co.,* 355 So.2d 892, 895–96 (La.1978). In other words, the children lack standing to prosecute their claims, which may only be prosecuted through the personal representative of the decedent's estate. *See Calton v. Zapata Lexington,* 811 F.2d 919, 921–22 (5th Cir.1987); *Futch v. Midland Enterprises, Inc.,* 471 F.2d at 1196 (deceased seaman's father, who was not personal representative of decedent, lacked standing to maintain action); *Tidewater Marine Towing, Inc. v. Dow Chemical Co.,* 689 F.2d 1251, 1253–54 (5th Cir.1982); *Nejad v. United States,* 724 F.Supp. 753, 756 (C.D.Cal.1989). Under DOHSA, then, the only plaintiff in this action is Roberta Cruz, as the appointed personal representative of the decedent's estate, and she could bring claims on behalf of others as well as on behalf of herself and her deceased husband's estate. It follows that Roberta Cruz had authority both to authorize Mr. Sincoff to settle any and all claims she could prosecute and to sign a release settling all such claims. *Cf. Williams v. Louisville & Nashville R.R. Co.,* 246 F.Supp. 758, 759 (E.D.Tenn.1965), *aff'd* 371 F.2d 125 (6th Cir.), *cert. denied,* 388 U.S. 919, 87 S.Ct. 2138, 18 L.Ed.2d 1364 (1967)

■■■■ Counsel for plaintiff suggests that the New York wrongful death statute, rather than DOHSA, governs the issue of who may maintain a claim. The difference is aca-demic, for the New York statute has the same effect as DOHSA. New York Estates, Powers and Trusts Law § 5–4.1(1) provides, in pertinent part:

> The personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued.... When the distributees do not participate in the administration of the decedent's estate under a will appointing an executor who refuses to bring such action, the distributees are entitled to have an administrator appointed to prosecute the action for their benefit.[4]

Under this provision, the right to bring a wrongful death action "is given to the administrator of the decedent for the[ ] benefit" of the statutory distributees. *Bonilla v. Abbott,* 113 A.D.2d 861, 493 N.Y.S.2d 592, 593 (2d Dept.1985); *accord Fried v. Seippel,* 170 A.D.2d 303, 566 N.Y.S.2d 27 (1st Dept.1991), *reversed on other grounds,* 80 N.Y.2d 32, 587 N.Y.S.2d 247, 599 N.E.2d 651 (1992). Only the personal administrator may maintain the action. *Mingone v. New York,* 100 A.D.2d 897, 474 N.Y.S.2d 557, 560 (2d Dept.1984); *Fried v. Seippel,* 566 N.Y.S.2d at 27; *Gregory v. Monroe County Water Authority,* 795 F.Supp. 92, 94–95 (W.D.N.Y.1992). The distributees—here, the children—may not maintain their own cause of action. *See Mingone v. New York,* 474 N.Y.S.2d at 560; *In re Holquin's Estate,* 101 Misc.2d 174, 420 N.Y.S.2d 670, 672–73 (Surr.Ct., Queens Cty. 1979). Hence, under New York law as under federal law, the claims of the children are, in a legal sense, claims of Roberta Cruz; they

---

is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought.

**4.** N.Y.E.P.T.L. § 11–3.2(b) provides, in relevant part:

No cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent....

are hers to prosecute—and to settle. *See In re Holquin's Estate,* 420 N.Y.S.2d at 673 (citing cases).[5]

■ Here, it is clear that Roberta Cruz both authorized Mr. Sincoff to settle the action and herself signed a general release that, in exchange for $800,000, released KAL from liability for all possible claims relating to the death of Alfredo Cruz. By agreeing to settle the action, either by authorizing Mr. Sincoff to do so or by signing a general release, Roberta Cruz settled all the claims in the action, as she was empowered to do.[6] The claims of the children, which were Roberta Cruz's claims to bring, were therefore settled by Roberta Cruz's actions.

### Conclusion

KAL's motion to enforce the settlement agreement is granted. On performance of the settlement agreement, KAL will be discharged from any further liability for the death of Alfredo Cruz.

SO ORDERED:

---

5. Indeed, Roberta Cruz's affidavit on this motion states that, "Unless it can be said that every possible claim arising from the wrongful death of my husband can be asserted by his executrix, then I do not believe the settlement is binding without the signatures of all my children." Roberta Cruz Affidavit ¶ 13. As the text explains, because the executrix (and only the executrix) *can* assert every possible claim, the settlement is binding on all parties.

6. The children argue that the releases sought by KAL from each of them suggest that KAL needed these releases in order to extinguish the claims of the children. The children suggest that KAL's request for these releases was "additional consideration for the agreed upon sum and the demand for this consideration constituted a revised offer of settlement." Letter of August 25, 1993, at 2. I reject this suggestion. The only release needed by KAL was that of Roberta Cruz. However, as pointed out by counsel for KAL at the hearing before this court, it makes sense for KAL to seek releases from all other individuals on whose behalf claims were asserted, so that those individuals may not later attempt to assert claims already settled by the personal representative. Without individual releases, additional time and money of KAL might be spent obtaining the dismissal of such already settled claims. *See* Tr. at 58.