**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 910, AFL–CIO, by George INTSCHERT, as Financial Secretary, Plaintiff,**

v.

**Thomas H. ROBERTS, d/b/a/ A.C. Electric, Defendant.**

No. 96–CV–539.

United States District Court, N.D. New York.

Jan. 5, 1998.

Blitman & King LLP (Charles E. Blitman, Kenneth L. Wagner, of counsel), Syracuse, NY, for plaintiff.

Office of Darrell L. Bowen (Darrell L. Bowen, of counsel), Plattsburgh, NY, for defendant.

## MEMORANDUM-DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

### A. Introduction

The International Brotherhood of Electrical Workers, Local 910 (the "Union") instituted this action against Thomas H. Roberts, d/b/a/ A.C. Electric ("Roberts") to enforce an award of a joint labor-management committee (the "Joint Committee"). Pending before the Court is the Union's motion for summary judgment (1) to enforce the award of the Joint Committee, (2) to dismiss Roberts' counterclaims, and (3) for an award of attorneys' fees. Roberts, in turn, has cross-moved to dismiss the Union's Complaint.

According to the Union, because the Joint Committee held that Roberts violated several provisions of the collective bargaining agreements (the "Agreement"), the Court should enforce the Joint Committee's final and binding decision. For the same reason, the Union asserts that Roberts' counterclaims should be dismissed because the Joint Com-

mittee has reviewed and denied Roberts' counterclaims. Finally, the Union contends that the Court should award attorneys' fees because Roberts' refusal to comply with the Joint Committee's decision was without justification.

Roberts, by contrast, contends that: (i) he never entered into the Agreement; and alternatively: (ii) he terminated the Agreement; and (iii) bias of a Joint Committee member tainted the Committee's decision.

For the reasons that follow, the Union's motion for summary judgment is GRANTED insofar it seeks enforcement of the award of the Joint Committee and dismissal of Roberts' counterclaims; it is DENIED insofar as it seeks attorneys' fees. Roberts' motion to dismiss is DENIED in its entirety.

### B. Facts

In a prior proceeding, this Court determined that a valid and binding collective bargaining agreement existed between the Union and Roberts, that Roberts did not terminate the Agreement, and that Roberts must submit to the grievance procedure contained in the Agreement. *Roberts v. I.B.E.W. Local 910 AFL–CIO*, No. 94–CV–963, transcript of hearing (N.D.N.Y. Feb. 13, 1995), *aff'd by summary order*, 89 F.3d 826, 1995 WL 722250 (2d Cir.1995).

As required by this Court's order, Roberts submitted to the grievance procedure contained in the Agreement. Both sides participated in grievance hearings held on July 25, 1995 and December 14, 1995.[1] On February 16, 1996, the Joint Committee held that Roberts violated several provisions of the Agreement and ordered him to pay $262,900.58. Roberts, however, has failed to pay that sum.

Meanwhile, on July 27, 1995, Roberts filed a grievance against the Union, claiming that unnamed union members had performed certain work in violation of the Agreement. As a result of a dispute between the Union and Roberts regarding the receipt of certain materials, the hearing was delayed until January 9, 1997. Roberts then refused to partici-

---

1. It appears that the first hearing in July was adjourned until December to permit the gathering of further documentation relating to the dispute.

pate in the hearing. On March 14, 1997, the Joint Committee considered Roberts grievance based on the documentary evidence Roberts had previously submitted. On June 5, 1997, the Joint Committee denied Roberts' grievance.

The Union has filed the instant Complaint to enforce the award of the Joint Committee. Roberts, in turn, has asserted three counterclaims. Counterclaim one asserts that the Union permitted its members to compete directly with it and other regional contractors, in violation of the Agreement. Counterclaim two seeks to set aside the Joint Committee's decision denying his grievance. Counterclaim three avers that the award of the Joint Committee should be decreased by the amount of lost profits suffered by Roberts as a result of the alleged violation of the Agreement described in counterclaim one.

Now before the Court is the Union's motion for summary judgment to enforce the award of the Joint Committee, to dismiss Roberts' counterclaims, and for an award of attorneys' fees. Roberts, in response, has cross-moved to dismiss the Union's Complaint.

## II. DISCUSSION

### A. Standard For Summary Judgment

The standard for summary judgment is well-settled. A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of "informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The initial burden is to demonstrate "that there is

an absence of evidence to support the non-moving party's case." *Id.* at 325.

The nonmoving party may defeat the summary judgment motion by producing sufficient evidence to establish a genuine issue of material fact for trial. *See id.* at 322. The test for existence of a genuine dispute is whether a reasonable juror could find for the nonmoving party; that is, whether the non-movant's case, if proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In ruling on a motion for summary judgment, a Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs.*, 834 F.2d 54, 57 (2d Cir.1987). The nonmoving party, however, "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and quotations omitted).

It is with the foregoing standards in mind that the Court turns to the issues presented.

### B. The Union's Motion for Summary Judgment

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), authorizes federal courts to enforce final and binding decisions and awards by a joint union-employer grievance panel.[2] *See General*

---

**2.** 29 U.S.C. § 185(a) provides:
Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting com-

merce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect

*Drivers, Local No. 89 v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963)) ("*General Drivers*"); *Kallen v. District 1199, Nat'l Union of Hosp. and Health Care Employees*, 574 F.2d 723, 725 (2d Cir.1978). These awards, like arbitration awards, are entitled to considerable deference from the courts. *See, e.g., Sheet Metal Workers Int'l Ass. Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 744 (9th Cir.1985) (citing *General Drivers*, 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963)); *Teamsters Freight Employees Local 480 v. Bowling Green Express, Inc.*, 707 F.2d 254, 255 (6th Cir.1983). As explained by the Supreme Court, "[i]f the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under § 301." *General Drivers*, 372 U.S. at 519. Indeed, it is "not open to the courts to reweigh the merits of the grievance." *See, e.g., id.* (citing *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)); *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

In a prior proceeding, this Court held that a binding collective bargaining agreement existed between the Union and Roberts and that Roberts must submit to the grievance procedure in the Agreement. *Roberts v. I.B.E.W. Local 910 AFL–CIO*, No. 94–CV–963, transcript of hearing (N.D.N.Y. Feb. 13, 1995), *aff'd by summary order*, 89 F.3d 826, 1995 WL 722250(2d Cir.1995). As required by the Court's order, Roberts submitted to the grievance procedure. The Joint Committee found that Roberts had violated several provisions of the Agreement and directed Roberts to pay $262,900.58.

The Union asserts that the award of the Joint Committee should be enforced because the award was rendered in accordance with the parties' contractual obligations under the Agreement. It is correct. The award reflects the sides' chosen resolution of the dispute pursuant to a valid collective bargaining agreement.

Roberts, however, raises several objections to the enforcement of the award. First, Roberts contends that he never entered into the Agreement. In a prior preceding, however, this Court held that a valid collective bargaining agreement existed between the parties. Ordinary principles of preclusion, therefore, prevent Roberts from relitigating the issue of contract formation. Second, Roberts contends that he terminated the Agreement. Again, however, the issue of termination, like the existence of a contract, has previously been decided and cannot now be revisited.[3]

Third, Roberts argues that bias of a Committee member, Thomas Millea, tainted the Joint Committee's decision. Roberts rests his bias claim on allegations that Millea knew, from the inception of the Agreement, that Roberts was in noncompliance with several of the Agreements' provisions. Roberts also surmises that Millea may have been responsible for the unknown whereabouts of certain documents Roberts claims to have submitted to the Committee in opposition to the Union's grievance against him.

Although a demonstration of "evident partiality" requires a court to set aside an arbitration award, *see, e.g., Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 82 (2d Cir.1984) (vacating arbitration award rendered by sole arbitrator who was the son of a father involved in the grievance), Roberts' claim of bias does not rise to this level. Aside from naked allegations, Roberts offers no evidence in support of his bias claim. *See Local 814, Intern. Brotherhood of Teamsters v. J & B Systems Installers & Moving, Inc.*, 878 F.2d 38, 40 (2d Cir.1989) (stating that mere speculation of bias in insufficient). Even if the Court leaps to the conclusion that Millea exhibited bias towards Roberts, the award of the Joint Committee did not suffer. This is because Millea did not participate in

---

to the amount in controversy or without regard to the citizenship of the parties.

**3.** For the same reason, the Court rejects Roberts' claim that the damages awarded to plaintiff are exaggerated because the Agreement was terminated in 1993.

the hearings after objection by Roberts.[4] Specifically, Millea neither deliberated nor voted on the matter. The Court thus rejects Roberts' claim that bias by Millea requires that the award be set aside.

In sum, to endorse Roberts' attempt to allude the award of the Joint Committee would be tantamount to gutting the Agreement of its force and effect. There is no basis to set aside the award, and thus the Union's motion to enforce the award is GRANTED.

## C. Roberts' Motion to Dismiss

For the reasons stated above, Roberts' motion to dismiss the Union's Complaint is DENIED.

## D. The Union's Motion to Dismiss Roberts' Counterclaims

The Union moves to dismiss Roberts' counterclaims. Roberts' first counterclaim asserts that the Union permitted its members to compete directly with Roberts and other regional contractors, in violation of the Agreement. Counterclaim two seeks to set aside the Joint Committee's decision denying his grievance. Counterclaim three avers that the award of the Joint Committee should be decreased by the amount of lost profits suffered by Roberts as a result of the alleged violation of the Agreement described in Counterclaim one.

Turning first to Robert's second counterclaim, this claim must be dismissed for the same reason that the Unions' claim was granted; namely, Roberts is bound to adhere to the dispute resolution agreed to under the Agreement. Because Roberts' claim has been reviewed and denied by the Joint Committee, this Court must likewise dismiss Roberts' counterclaim. The Court already has found that the arguments proffered by Robert in opposition to the Union's motion to be meritless. Notably, Roberts' provides the Court with no other reason why the counterclaim should not be dismissed. Any argument, even if made, that Roberts' abandonment of his grievance claim provides a basis

for this Court to vacate the award of the Joint Committee, is wrong. *See, e.g., Dean v. Sullivan,* 118 F.3d 1170 (7th Cir.1997).

■ Roberts' first and third counterclaims involve allegations that the Union permitted its members to compete directly with Roberts and other regional contractors, in violation of the Agreement. Roberts, however, must submit these claims to the grievance procedure in accordance with the Agreement; this Court cannot adjudicate them. These counterclaims are thus also dismissed.

## E. Attorneys' Fees

■ Lastly, the Union argues that it is entitled to attorneys' fees because Roberts' refusal to comply with the Committee award was without justification.

As a general rule, attorneys fees are not awarded to a successful party in the absence of statutory authority. The statutory basis for this action, section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, does not provide for attorneys' fees. *See, e.g., International Chemical Workers v. BASF Wyandotte Corp.,* 774 F.2d 43, 47 (2d Cir.1985). As a matter of equity, however, attorneys' fees may be awarded if a party has acted in bad faith, vexatiously, or wantonly. *Id.; Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Further, "when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Id.* (quoting *Bell Production Engineers Ass'n v. Bell Helicopter Textron,* 688 F.2d 997, 999 (5th Cir.1982)); *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338, Affiliated with the Retail, Wholesale and Department Store Union, AFL–CIO,* 118 F.3d 892, 898 (2d Cir.1997).

The Court finds that Roberts has made colorable arguments that weight against awarding attorneys' fees. A contrary result is not required merely because Roberts' arguments have been rejected. Roberts' pa-

---

**4.** Millea signed the Committee award merely to satisfy the quorum requirement under the Agreement.

pers make plain that his refusal to comply with the award of the Joint Committee was based upon his good-faith belief that award did not bind him. For instance, Roberts made arguments relating to existence and termination of the Agreement. Roberts further argued that the award was improperly tainted by participation of a biased committee member. On balance, Roberts' refusal to comply with the award of the Joint Committee cannot be characterized as without justification. Moreover, the Union does not allege—nor has there been any indication to the Court—that Roberts acted in bad faith, wantonly or vexatiously.

Accordingly, an award of attorneys' fees is not appropriate.

## III. CONCLUSION

For the reasons stated herein, the Union's motion for summary judgment is GRANTED insofar it seeks enforcement of the award of the Joint Committee and dismissal of Roberts' counterclaims; it is DENIED insofar as it seeks attorneys' fees. Roberts' motion to dismiss is DENIED in its entirety.

**IT IS SO ORDERED.**