**David SORENSEN, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

**No. 96–CV–4 (DRH).**

United States District Court, N.D. New York.

Jan. 28, 1998.

David Sorensen, Greenville, NY, pro se.

Hodgson, Russ, Andrews, Woods & Goodyear, LLP (David L. Cochran, of Counsel), Albany, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

HOMER, United States Magistrate Judge.

Defendant Consolidated Rail Corporation ("Conrail") has moved to enforce an oral settlement agreement allegedly reached with plaintiff David Sorensen ("Sorensen"). Docket No. 17. For the reasons which follow, that motion is granted.

### I. Background

Sorensen commenced this action on January 2, 1996 by filing a complaint seeking damages against Conrail under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq.; the Federal Safety Appliance Act, 45 U.S.C. § 2; and the Federal Boiler Inspection Act, 45 U.S.C. § 22 et seq. Docket No. 1. Sorensen alleged that while employed by

Conrail on March 22, 1993, he was injured in the course of his employment due to the negligence of Conrail. Sorensen was represented by the law firm of McClung, Peters & Simon ("McClung Peters"). On August 6, 1996, Sorensen retained new counsel to represent him in this case. Docket No. 7. On November 1, 1996, Sorensen once again retained McClung Peters to represent him. Docket No. 8. Jeremy R. Feedore, Esq. of McClung Peters assumed responsibility for the case.

The case was eventually scheduled for trial commencing August 25, 1997. Docket No. 15. On July 3, 1997, a settlement conference was held in the chambers of the undersigned. Sorensen was present with Feedore as was Gary M. Baker, Senior Claim Agent for Conrail, and Conrail's attorney. The conference concluded without agreement. Sorensen's final demand for settlement during the conference was $10,000. Conrail's last offer was $5,000.

On August 1, 1997, Feedore, Baker and Conrail's attorney discussed the settlement of this case in a conference telephone call. Feedore advised Baker that Sorensen would agree to resolve the case for $7,500. Baker accepted. According to both Feedore and Baker, the oral agreement reached on August 1 consisted of Conrail's agreement to pay Sorensen $7,500 in full satisfaction of the claims asserted in the complaint and Sorensen's agreement to sign a release and to dismiss this action with prejudice. Baker and Feedore agreed that Baker would meet Feedore and Sorensen at Feedore's office on August 5, 1997 at 4:30 p.m. to exchange the check and the release. Baker appeared on August 5 with the check and a release for Sorensen to sign. Sorensen, however, telephoned Feedore shortly after 4:30 and advised that he would be unable to come to Feedore's office because he was at the dentist for emergency treatment. Another meeting was scheduled for August 8 at 2:30.

On August 6, Sorensen telephoned Feedore's office and left a message with Feedore's secretary that he "elect[ed] to go to trial." Ex. S. Feedore was on vacation, however, and it does not appear that anyone else was given the message. Thus, on August 8, Baker again appeared at Feedore's office with the settlement check and release in hand. Stephen Kerwin, Esq., substituted for Feedore. When Sorensen did not appear, Kerwin caused a telephone call to be placed to Sorensen. Sorensen advised that he again would be unable to meet Baker that day but said nothing about intending to proceed to trial. The meeting was again rescheduled for the following Monday, August 11, at 4:00.

Baker appeared again on August 11 with the settlement check and release. When Sorensen had not appeared by 4:30, Baker departed. Baker left the release with Linda Battiste, Esq., the attorney substituting for Feedore, who was still on vacation. Like Kerwin, Battiste was unaware of any details of the case. Baker asked Battiste to have Sorensen sign the release and Baker would then exchange the settlement check for the release later in the week.

Shortly thereafter, Sorensen appeared at McClung Peters accompanied by Cassandra Channing, Esq. Channing is an attorney with an office in Catskill. She was admitted to practice in New York in 1995, engages in a general civil and criminal practice which includes litigation, but is not admitted to practice in federal court. She became close friends with Sorensen in June 1997 and thereafter agreed to assist him in this case by accompanying him to all meetings and to be present for all telephone conversations with his attorney. Battiste presented the release to Sorensen for his signature. Sorensen expressed surprise that a settlement agreement had been reached, declined to sign the release, insisted that he intended to go forward with the trial and restated to Battiste several complaints he had with how his case had been handled by McClung Peters.[1] On August 12, McClung Peters noti-

<hr/>

1. On June 24, 1997, Sorensen sent a letter to Feedore written by Channing in which Sorensen requested to review various pleadings, including a witness list, questions to be asked of each witness, a list of expert witnesses and their antic-

ipated testimony, voir dire questions, proposed jury instructions, a written explanation of the law on which Feedore would be relying at trial, a written explanation for Feedore's reduced estimate of the value of the case, and a written

fied Conrail's counsel that Sorensen would not sign the release. This motion followed.

After Conrail filed this motion, McClung Peters moved to withdraw as Sorensen's counsel. Docket No. 20. That motion was granted and Sorensen was allowed time to obtain new counsel. Docket No. 27. Sorensen failed to do and has since proceeded pro se.[2] An evidentiary hearing was held on January 20, 1998. This decision constitutes findings of fact and conclusions of law concerning Conrail's motion.

## II. Discussion

### A. Attorney's Authority to Settle

■ A district court has the authority to enforce a settlement agreement reached in a case pending before it. *Cruz v. Korean Air Lines Co., Ltd.*, 838 F.Supp. 843, 845–46 (S.D.N.Y.1993) (citing *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir.1974)). It is clear that the decision to settle a case is the client's alone. *United States v. Beebe*, 180 U.S. 343, 350–53, 21 S.Ct. 371, 45 L.Ed. 563 (1901); *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501–02 (2d Cir.1989). A client does not automatically confer upon an attorney the authority to settle a case on his or her behalf. *In re Artha Management, Inc.*, 91 F.3d 326, 329 (2d Cir.1996). However, an attorney may have actual or implied authority to enter a binding settlement and in a federal question case, the scope of an agent's authority is a question of federal law. *Id.* at 328. When the attorney of record enters into a settlement agreement, there is a presumption that the attorney had authority to do so. *Id.* at 329. The party seeking to prove a lack of settlement authority "bears the burden of proving by affirmative evidence that the attorney lacked authority." *Id.* That burden is not insubstantial. *United States v. Int'l Bhd. of Teamsters*, 986 F.2d 15, 20 (2d Cir.1993).

statement "as to what percentage of likelihood of success you currently expect as a result of this trial...." Ex. 1, Hearing on Jan. 20, 1998. Sorensen and Channing had previously reviewed the McClung Peters file of this case in Feedore's office. Sorensen and Channing renewed their request to review these documents. Sorensen also complained that Feedore was requiring Sorensen to pay the fees of expert witnesses for his trial in advance of the trial.

■ Actual authority "may be inferred from words or conduct which the principal has reason to know indicates to the agent that he is to do the act." *Id.* (citations omitted). Apparent authority is "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from or in accordance with the other's manifestations to such third persons." Restatement (Second) of Agency § 8 (1958). Only the principal can act to bestow apparent authority upon an agent. The agent cannot unilaterally obtain this authority. *Fennell*, 865 F.2d at 502. However, "if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld." *Id.*

■ Here, Sorensen contends that he never authorized Feedore to settle this case and always made known his intent to proceed to trial. Ex. 2.[3] This testimony directly conflicts with that of Feedore. Feedore testified that on August 1, he spoke with Sorensen. Sorensen had reconsidered his position on Conrail's $5,000 offer and authorized Feedore to settle the case for that amount or for whatever amount over $5,000 could be obtained. Feedore then telephoned Baker and Conrail's counsel and obtained agreement to settle the case for $7,500 as per Sorensen's instructions. Ex. B.

Sorensen has failed to meet his burden of proof. First, the evidence offered to support his claim lacks sufficient credibility. Sorensen himself testified that shortly prior to August 1, he made arrangements for surgery for August 26, 1997 when his trial was still scheduled to proceed. He did not cancel this surgery until sometime after August 1. This conduct is inconsistent with his avowed intent throughout to proceed to trial on August 25

2. Channing has been present with Sorensen at each conference and proceeding.

3. "Ex." followed by a letter (Conrail's) or number (Sorensen's) refers to exhibits received in evidence during the evidentiary hearing on January 20, 1998.

as scheduled. Moreover, the credibility of Sorensen's testimony was substantially impeached by contradictory evidence and inconsistencies. For example, Sorensen and Channing testified that Sorensen failed to appear for the meeting with Baker scheduled for August 8 because he was working out of state. Conrail's records showed Sorensen was not working that day, however.

Second, the evidence offered by Conrail overwhelmingly establishes that Sorensen actually authorized Feedore to settle the case as Feedore did on August 1. Feedore's testimony was corroborated by that of Baker and Kerwin. It is also corroborated by the testimony of Frances Alberti, then Feedore's secretary, who testified that she spoke to Sorensen by telephone on August 6 at which time Sorensen told her that he had canceled his surgery and now elected to go to trial. Ex. S. Sorensen's message makes sense only if Sorensen had previously communicated otherwise, as Feedore testified.

Thus, from the evidence adduced at the hearing, the conclusion is compelled that Feedore received actual authority from Sorensen on August 1, 1997 to settle this case on the terms agreed with Conrail, and Sorensen has failed to meet his burden of establishing the absence of such authority.

### B. Enforcement of the Agreement

■ There is no dispute that on August 1, 1997, Feedore and Baker orally agreed to settle this case on the terms described above. The determination of whether to enforce such a oral settlement agreement is guided by a consideration of four factors:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Ciaramella v. Reader's Digest Ass'n,* 131 F.3d 320, 323 (2d Cir.1997); *see also Winston v. Mediafare Entertainment Corp.* 777 F.2d 78, 80 (2d Cir.1985). No one factor is determinative of the issue. *Ciaramella,* 131 F.3d at 323.

#### 1. Express Reservation

The record is undisputed that as to the first factor, the parties intended to be bound by the verbal agreement between Feedore and Baker. Both testified that no terms remained to be resolved and that both intended to be bound by their August 1 conversation. This factor weighs in favor of Conrail.

#### 2. Partial Performance

■ Conrail contends that it partially performed its obligation under the terms of the agreement by appearing at the offices of Sorensen's attorney on August 5, 8 and 11, 1997 with the settlement check in hand for delivery to Sorensen. However, it is clear that the check was never actually delivered to Sorensen and that the agreement required actual delivery. *See Ciaramella,* 131 F.3d at 325. Therefore, there is no evidence that Conrail engaged in any partial performance of the agreement and this factor weighs in favor of Sorensen.

#### 3. Terms Remaining to be Negotiated

No terms remained to be negotiated here, not even "minor" or "technical" points. *See Winston,* 777 F.2d at 82–83. All such terms were stated and understood by Feedore and Baker on August 1. This factor thus weighs in favor of Conrail.

#### 4. Type of Agreement That Is Usually Reduced to a Writing

■ Most often, settlement agreements are committed to writing or placed on the record in open court before becoming final. *See Ciaramella,* 131 F.3d at 326; N.Y.C.P.L.R. § 2104 (McKinney 1997). Substantial interests in certainty and finality undergird this practice. *See Winston,* 777 F.2d at 83. Commitment to writing or placement on the record are not absolute requirements for enforcement, however. *See Hartford Fire Ins. Co. v. SS "AN CHUN",* No. 96 Civ. 7738(DLC), 1997 WL 790578 (S.D.N.Y. Dec.24, 1997) (enforcing oral settlement agreement).

■ Among the factors considered in determining whether the oral agreement is usually reduced to writing or placed on the record are the complexity of the agreement, *see Ciaramella,* 131 F.3d at 326, and any prior practice of the parties in similar cases. Here, the agreement was exceedingly simple. Conrail agreed to pay Sorensen $7,500 in return for a release from liability and a dismissal of this case with prejudice. *Compare Ciaramella,* 131 F.3d at 326 (unenforced oral agreement spanned eleven pages of text in written draft and various terms extended into perpetuity) *with Hartford Fire Ins. Co.,* 1997 WL 790578 (enforced oral agreement required only that defendant pay plaintiff $26,000 in settlement of plaintiff's claim).

Moreover, the agreement here was of the type made orally by both Feedore and Baker in past cases similar in nature to this. Baker testified that he personally settled cases for Conrail brought by employees on similar terms without commitment to writing or placement on the record approximately twenty-five times a year. Feedore testified that in his view the August 1 verbal agreement was a "complete agreement" and that in ten years of practice, he had settled approximately fifty similar cases by verbal agreements containing similar terms without commitment to writing or placement on the record.

For both reasons, then, this factor weighs in favor of Conrail.

### 5. Conclusion

■ The consideration of these factors is intended to provide "significant guidance" in determining whether Sorensen and Conrail intended to be bound by the oral agreement between Feedore and Baker in the absence of a document executed by both sides. *Ciaramella,* 131 F.3d at 323. Analyzing the record in this case in light of the four factors considered above, that record clearly and convincingly demonstrates that with Sorensen's approval, Feedore and Baker entered into an oral agreement to settle this case by which both Sorensen and Conrail intended to

be bound. Conrail's motion to enforce that agreement, therefore, must be granted.

### C. Costs and Fees

■ In its motion filed August 29, 1997, Conrail moved for enforcement of the settlement agreement and "for such other and further relief as this Court deems just and proper." Docket No. 17. By letter dated September 8, 1997, Conrail's counsel requested that any order granting its motion also include allowance for its costs and attorney's fees incurred in connection with this motion.[4] Excluding attorney's fees, Conrail is entitled to costs incurred after August 12, 1997 in making and litigating this motion. *See* 28 U.S.C. §§ 1920, 1924.

■ No statutory authority appears for the granting of attorney's fees here. As a matter of equity, however, such fees may be allowed if a party has acted in bad faith, vexatiously or wantonly. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Int'l. Chem. Workers v. BASF Wyandotte Corp.,* 774 F.2d 43, 47 (2d Cir.1985); *Int'l Bhd. of Elec. Workers, Local 910 v. Roberts,* 992 F.Supp. 132, 136 (N.D.N.Y.1998) (McAvoy, C.J.). The fact that a party prevails on a particular motion does not automatically entitle that party to recover attorney's fees. *See Int'l Bhd. of Elec. Workers,* 992 F.Supp. at 136 (attorney's fees denied to prevailing party); *Hartford Fire Ins. Co.,* 1997 WL 790578, at *2 (same).

Here, although Sorensen's evidence and arguments have been rejected in material respects, there is insufficient evidence to conclude that Sorensen acted in bad faith, vexatiously or wantonly. This conclusion is further supported by the fact that Sorensen defended this motion pro se for most of its pendency. *Cf. Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir.1994) ("Recognizing that the [plaintiffs] were acting pro se, the district court should have shown them special solicitude . . . ."). Accordingly, Conrail's applica-

---

4. That letter was served upon Sorensen's counsel of record at the time but was not filed in the

docket of this case. The Clerk is hereby directed to file counsel's letter of September 8, 1997.

tion for costs, excluding attorney's fees, is granted.

## III. Conclusion

For the reasons stated above, it hereby

**ORDERED** that:

1. Conrail's motion to enforce the oral settlement agreement of August 1, 1997 is **GRANTED**;

2. Conrail's request for allowance of costs incurred in connection with this motion is **GRANTED** to the extent that Conrail shall be allowed the costs, excluding attorney's fees, which it incurred in connection with the making and litigation of this motion on and after August 12, 1997;

3. In accordance with paragraph 2 above:

a. On or before **February 6, 1998,** Conrail shall file and serve a bill of costs for this motion in accordance with 28 U.S.C. §§ 1920 and 1924;

b. On or before **February 20, 1998,** Sorensen shall file and serve any opposition to Conrail's bill of costs; and

c. The question of the amount of costs awarded to Conrail shall be taken on submission without oral argument; and

4. Upon a determination of the amount of costs to be awarded to Conrail, an order will be entered directing Conrail to deliver to Sorensen a check in the amount of $7,500 less the amount of costs awarded to Conrail and, upon the filing of an affidavit that said check has been delivered to Sorensen, a further order will be entered dismissing this action with prejudice in accordance with the oral settlement agreement of August 1, 1997.

**IT IS SO ORDERED.**