**VAW OF AMERICA, INC., Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC, Defendant.**

**No. 98–CV–1781.**

United States District Court,
N.D. New York.

June 3, 1999.

---

Law Offices of Sheldon Rosenberg, Scranton, PA, Sheldon Rosenberg, of counsel, for Plaintiff.

United Steelworkers of America, Pittsburgh, PA, Arlus J. Stephens, Rudolph Milasich, Jr., Assistant General Counsel, Law Offices of Joel Field, White Plains, NY, Joel Field, of counsel, for Defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. Introduction

### A. Background

Plaintiff VAW of America, Inc., ("VAW" or the "Company") instituted this action against United Steelworkers of America, AFL–CIO–CLC (the "Union") pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, to set aside and vacate an arbitrator's award. Pending before the Court is (1) VAW's motion for summary judgment to set aside and vacate that portion of the arbitrator's award that held that the Company's imposition of a 40.5 hour disciplinary suspension was not warranted, and modified the suspension to 12 hours;[1] and (2) defen-

---

1. Though the arbitrator's Opinion and Award states that the grievant, Joan Krom, was initially suspended for 40.5 hours, the parties stipulate that the grievant was actually suspended for three work days. *See* Pl. Mem. of Law at 19; Amended Compl. at ¶ 10; Def. Mem. of Law at 5; *see also* Amended Compl. at Ex. 4 (hereinafter the "Grievance Report")

("Ms. Krom was unjustly suspended for three days."). This difference is irrelevant, however, as the issue before the Court is enforceability of the arbitrator's award, and not the amount of backpay, if any, due grievant. *See* Amended Compl. at ¶¶ 2, 16; Def. Mem. of Law at 18–19.

dant's cross-motion for summary judgment seeking to dismiss plaintiff's Amended Complaint and confirm the arbitrator's award.

According to VAW, because the arbitrator determined that Ms. Krom ("Krom" or the "grievant") engaged in prohibited conduct, that VAW did not violate the collective bargaining agreement (the "CBA")[2] between the Company and the Union, and that VAW had just cause to discipline the grievant, the arbitrator was without authority to modify the discipline imposed by VAW. *See* Pl. Mem. of Law at 4. In response, the Union argues that the arbitrator's award draws its essence from the "just cause" provision of the CBA and, thus, should be confirmed. *See* Def. Mem. of Law at 7.

## B. Facts

The instant case began with a telephone call the grievant's daughter placed to the grievant on February 11, 1998 after experiencing car trouble at school. The call was received by Clive Smith ("Smith"), VAW's Operating Manager, who communicated to the grievant's daughter that employees were limited to receiving emergency calls only. After the grievant's daughter informed Smith that she needed to speak with her mother to obtain her father's telephone number, the grievant was permitted to take the call. The grievant's husband was not at home, prompting her to seek permission from her manager, Darren Taylor ("Taylor") to leave work early to help her daughter. After signing a release-from-work form, grievant was permitted to leave work.

When the grievant returned to work, "she was extremely upset with Smith over what she perceived as the delay in her being permitted to leave work and in the

way in which Smith spoke to her daughter on the phone." Def. Mem. of Law at 5. The grievant subsequently confronted Smith, stating, " 'no one can tell me when I can go to my kids.' " *Id.* Grievant then left Smith's office without his permission, slamming the door as she exited. Smith then ordered grievant to go home. The following day, grievant was informed that "the matter would be over" if she apologized to Smith. After declining to do so, grievant was suspended for three days without pay for insubordination because she ignored Smith's express order not to leave his office.

In accordance with the CBA, the Union filed a grievance on Krom's behalf, protesting the three-day suspension.[3] *See* Grievance Report at 1. The Grievance Report further stated that:

> Ms. Krom was provoked by Clive Smith into yelling at him. She yelled one sentence and used no profanity. She has no other record and was unjustly suspended for three days. Ms. Krom feels she did nothing wrong and should not have to apologize to Mr. Smith.

*Id.*

After the parties failed to resolve the dispute, the matter was presented to an arbitrator. The arbitrator framed the issues as: (1) whether VAW violated sections 1.1, 2.3, 6.1 or 25.1 of the CBA when it suspended grievant; (2) whether or not the imposed sentence was appropriate; and (3) if not, what . the appropriate discipline should be. *See* Amended Compl. at Ex. 5 (Opinion and Award of Arbitrator Thomas D. Mahar, Jr., dated October 28, 1998) (hereinafter the "Arbitrator's Decision"). Though noting that the Company had just cause to take disciplinary action against the grievant, the arbitrator held that:

---

**2.** The provisions of the CBA at issue were in effect at all times relevant to plaintiff's claim. *See* Amended Compl. at Ex 1 (Addendum Agreement extending terms of the CBA until January 14, 1999).

**3.** While grievant alleged that VAW violated sections 1.1, 2.3, 6.1 and 25.1 of the CBA, see Grievance Report at 1, the gravamen of her claim is based on whether VAW violated the "just cause" provision of the CBA in the imposition of a three-day suspension. *See* CBA, at § 6.1.

The penalty of 40.5 hours[4] suspension without pay[,] however[,] was not warranted. The [g]rievant has had a good work record for 7½ years and apparently was a productive employee for the company. She was definitely upset and concerned about her child. I therefore find that she should be suspended without pay for 12 hours and her records adjusted accordingly.

Arbitrator's Decision at 5–6.

Citing to excerpts in the decision and award sections of the Arbitrator's Decision addressing whether VAW violated section 6.1 of the CBA, plaintiff argues that once the arbitrator found that VAW did not violate the CBA and had just cause for disciplining grievant, the arbitrator was divested of any authority to modify the period of suspension imposed by VAW. *See* Pl. Mem. of Law at 12–13. It is plaintiff's contention that VAW alone had the *exclusive* authority to determine the appropriate disciplinary action under section 6.1 of the CBA,[5] see id. at 14 (emphasis added), and the arbitrator was without power to unilaterally modify the terms of that provision. *See* CBA, at § 17.8. In response, defendant argues that the arbitrator's modification of grievant's suspension "draws its essence" from the "just cause" provision in the CBA as it was within the arbitrator's authority to determine whether the degree of discipline imposed by the Company was proportional to the offense charged and the grievant's service record with the Company. *See* Def. Mem. of Law at 13–14. Thus, the Court must determine whether the arbitration provision of the CBA permitted the arbitrator to modify the discipline imposed by VAW, after determining that there was just cause for

VAW to impose some form of disciplinary action against the grievant.

## II. Discussion

### A. The Standard for Summary Judgment

The standard for summary judgment is well-settled. Under FED.R.CIV.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (1996). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R.CIV.P. 56(c)). The initial burden is to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348. A dispute regarding a material fact is genuine if a reasonable jury could return a verdict for the non-moving party; that is, whether the non-movant's case, if

---

**4.** As indicated earlier, the parties do not dispute that plaintiff was suspended for three days. *See supra*, footnote 1.

**5.** Section 6.1, commonly referred to as the "just cause" provision, states, in relevant part:

Subject to the provisions of this Agreement, the Company shall be the exclusive judge on all matters in connection with the ... direction and control of plant operations, shift rosters, starting and quitting times, hiring, promotions, the relief of employees from duty because of lack of work or other legitimate reasons, and the disciplining, suspension, or discharge for just cause of employees.

proved at trial, would be sufficient to survive a motion for judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When reasonable minds, however, could not differ as to the import of the evidence, then summary judgment is proper. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985) *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987), the motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & H.R. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). Indeed, the nonmoving party's opposition may not rest on mere allegations or denials of the moving party's pleading, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### B. Enforceability of the Arbitration Award

"When an arbitrator is given the power under a collective bargaining agreement to adjudicate the propriety of employer disciplinary action, the award is accorded broad deference." *Hill v. Staten Island Zoological Soc'y, Inc.*, 147 F.3d 209, 212 (2d Cir.1998); *see also International Bhd. of Elec. Workers, Local 910 v. Roberts*, 992 F.Supp. 132, 135 (N.D.N.Y.1998)

("If the award at bar is the parties' chosen instrument for the definitive settlement of grievances under the Agreement, it is enforceable under § 301.") (quoting *General Drivers, Local No. 89 v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963)). Indeed, it is "not open to the courts to reweigh the merits of the grievance." *Roberts*, 992 F.Supp. at 135 (citing *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). Accordingly, the arbitrator's award will not be disturbed as long as it " 'draws its essence from the collective bargaining agreement' " and is not merely the arbitrator's "own brand of industrial justice." *Hill*, 147 F.3d at 212 (quoting *Misco*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (internal quotation marks and citations omitted)). As the Second Circuit stated in *Hill*:

> as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision. Our cases have consistently acknowledged the broad deference due to arbitrators' awards in this context.

147 F.3d at 212 (citing *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338*, 118 F.3d 892, 896 (2d Cir.1997); *Saint Mary Home, Inc. v. Service Employees Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir.1997); *Local 453, Int'l Union of Elec., Radio & Mach. Workers v. Otis Elevator Co.*, 314 F.2d 25, 28 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963)).

Plaintiff argues that the arbitrator exceeded his authority under the CBA when he modified the Company's disciplinary suspension after finding that it had just cause to discipline grievant.

Similar to the management rights clause at issue in *Hill*,[6] the provision included in

---

**6.** Specifically, that clause stated:

[t]he Union and the employees agree that

the parties' CBA provides the employer the exclusive right to discipline, suspend, or discharge the employee for just cause. *See* CBA, at § 6.1. That right, however, is subject to Articles XV and XVII, which provide for a grievance procedure that includes arbitration of grievances concerning, *inter alia,* disagreements with any suspension, discharge, or disciplinary layoff imposed by the Company for "just cause."[7] Though the phrase "just cause" is undefined in the CBA, "it is certainly reasonable to construe it to mean just cause for the particular 'disciplinary action' taken by the [employer]." *Hill,* 147 F.3d at 213; *see also First Nat'l Supermarkets, Inc.,* 118 F.3d at 896 ("[Where 'just cause' is not defined in the collective bargaining agreement] and where the [agreement] authorizes the arbitrator to resolve disputes concerning the interpretation or application of its terms, it remains for the arbitrator to determine whether a discharge was for 'just cause.' ").

 Contrary to VAW's contention, the "just cause" provision in the management's rights clause does not vest in the employer "the unreviewable right" to impose disciplinary action. *Hill,* 147 F.3d at 212. Rather, the "just cause" provision authorizes the arbitrator to review the reasonableness of the penalty imposed by the employer in relation to the employee's wrongful conduct. *See Misco,* 484 U.S. at 41, 108 S.Ct. 364 ("Normally an arbitrator is authorized to disagree with the sanction imposed for employee misconduct.... [The arbitrator] 'is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies.' ") (quoting *United Steelworkers of*

*Am. v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)); *Hill,* 147 F.3d at 213; *see also In re Moore's Seafood Prods.,* 50 Lab. Arb. (BNA) 83, 90 (Jan. 31, 1968) (noting that an arbitrator may consider "whether the degree of discipline administered by the company in a particular case [is] reasonably related to (a) the seriousness of the employee's proven offense and (b) the record of the employee in his service with the company" in determining whether an employer had just and proper cause for disciplining an employee). Significantly, the arbitrator's authority to substitute a remedy different than the one imposed by the employer need not be expressly granted in the collective bargaining agreement. *See Hill,* 147 F.3d at 213–14. Accordingly, the management rights clause at issue "does not limit the arbitrator's power to determine whether there was just cause for some disciplinary action without considering the penalty." *Id.* at 213. Recognizing the problems inherent in an interpretation that limits the arbitrator's ability to modify the penalty imposed by the employer, the Second Circuit in *Hill* noted:

> The interpretation urged by the [employer] would allow any infraction, no matter how minor or what the other circumstances involved, to serve as "just cause" for any discipline, no matter how disproportionate. The potential for abuse in such an interpretation is obvious, so much so that an arbitrator could obviously conclude, in the absence of more explicit language, that it must be rejected.

147 F.3d at 213.

Accordingly, absent express language to the contrary, the language in Article VI

---

the right to operate and manage the affairs of the Society, and the right to select and direct the working forces ... are vested exclusively in the Society. These rights include ... [the rights] to employ, assign, promote, discipline, discharge, lay off, transfer and retire the employees....

147 F.3d at 211.

7. The grievance procedures detailed in Article XVII, which includes the submission of unset-

tled grievances to an arbitrator, are applicable in the event that "differences arise between the Company and the Union as to the meaning and application of the provisions of this Agreement." Thus, any grievances relating to disciplinary action taken by the Company for just cause would fall within the scope of the arbitrator's authority.

cannot be construed as "a limitation on [the] routine power of the arbitrator" to impose a lesser penalty after determining that the employer's penalty was not supported by "just cause." *Hill*, 147 F.3d at 213–14.

■■■ The parties may, however, limit the discretion of the arbitrator to modify the discipline imposed by the employer by employing express language to that effect in the CBA. *See Misco*, 484 U.S. at 41, 108 S.Ct. 364; *Hill*, 147 F.3d at 213–14; *First Nat'l Supermarkets, Inc.*, 118 F.3d at 896 ("If [the employer] wished to have an unquestionable right to discharge an employee for any specified conduct, it needed to negotiate for recognition of that right in the [collective bargaining agreement]."); *Otis Elevator Co.*, 314 F.2d at 28 ("If the employer wanted the automatic right to discharge an employee for violation of certain company rules ... it had the opportunity to seek such an explicit exclusion from the general arbitration clause when the collective agreement was negotiated...."). For example, the arbitration agreement could provide that "[t]he only question which may be the subject of a 'grievance' is whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action." *First Nat'l Supermarkets, Inc.*, 118 F.3d at 897 (quoting *General Drivers, Warehousemen & Helpers Local Union 968 v. Sysco Food Servs.*, 838 F.2d 794, 796 (5th Cir.1988)); *see also Container Prods., Inc. v. United Steelworkers of Am., Local 5651*, 873 F.2d 818, 819 (5th Cir.1989) (arbitrator had no authority to alter the disciplinary action imposed by employer for just cause where contract required arbitrator to determine that no just cause existed as a prerequisite for altering discipline imposed by employer). Such a limiting provision was not, however, contained in the CBA at issue here. As already discussed, the management rights clause in

the CBA did *not* expressly limit the arbitrator's authority such that the Company was vested with complete discretion over disciplinary action imposed on its employees. Accordingly, the arbitrator's award at issue "draws its essence" from the CBA because the arbitrator acted within the scope of his authority when he determined that the Company's disciplinary suspension was not warranted in the light of the grievant's work record and past service to the Company. *See Hill*, 147 F.3d at 212 (quoting *Misco*, 484 U.S. at 36, 108 S.Ct. 364); *First Nat'l Supermarkets, Inc.*, 118 F.3d at 896.

The Company raises what it believes to be a wrinkle in the Arbitrator's Decision regarding whether the arbitrator expressly found that the Company violated the "just cause" provision. Specifically, the Company cites to a portion of the Arbitrator's Decision which states that the Company did not violate section 6.1 of the CBA. *See* Arbitrator's Decision at 7. VAW's selective reading of the Arbitrator's Decision overlooks the arbitrator's express determination that the penalty imposed by VAW was "not warranted" in light of the grievant's past service record.[8] *See id.* at 5. A review of the Arbitrator's Decision reveals that the arbitrator relied on the "just cause" provision in modifying the length of the grievant's disciplinary suspension. Implicit in the arbitrator's reduction in the disciplinary suspension imposed by the Company was a determination that the Company did *not* have just cause to impose a greater penalty. Thus, the Court finds the Arbitrator's Decision unambiguously determined that just cause did not exist for the penalty imposed by the Company. *See Ethyl Corp. v. United Steelworkers of Am., AFL–CIO–CLC*, 768 F.2d 180, 188 (7th Cir.1985) (Posner, J.), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986); *see also Hill*, 147 F.3d

---

**8.** In an earlier section of the Arbitrator's Decision the arbitrator states: "There was absolutely no evidence placed in the record as to support the alleged violation of Article 1.1, 2.3, and 25.1." Arbitrator's Decision at 5. Significantly, that statement excluded any reference to Article 6.1, the "just cause" provision.

at 212 (" '[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.' ") (quoting *Misco*, 484 U.S. at 38, 108 S.Ct. 364).

### III. CONCLUSION:

For all of the foregoing reasons, plaintiff's motion for summary judgment is DENIED, and defendant's cross-motion for summary judgment is GRANTED, dismissing plaintiff's Amended Complaint in its entirety and confirming the arbitrator's award. IT IS SO ORDERED.